**VISTAMAR, INC., Plaintiff,**

v.

**Antonio Santiago VAZQUEZ et al., Defendants.**

**Civ. No. 76–69.**

United States District Court,
D. Puerto Rico.

Dec. 28, 1971.

Rafael Vizcarrondo, of Fiddler, González & Rodríquez, San Juan, P. R., for plaintiff.

Jorge Martínez, San Juan, P. R., for the Government.

## MEMORANDUM AND ORDER

CANCIO, Chief Judge.

This is an action filed by Vistamar, Inc. against the Planning Board of Puerto Rico, its Chairman, the Public Works Department of Puerto Rico and the Secretary of Public Works of Puerto Rico. Plaintiff alleges that the defendants have deprived it of its property without due process of law; that since 1962 the defendants have refused to either approve for development or expropriate certain parcels of land which are the property of the plaintiff; that its property has been "frozen" thereby rendering it useless, all without any compensation; that plaintiff has had to pay taxes on the property without being able to use it; and that these actions of defendants have caused plaintiff damages. It requests money damages and injunctive relief in the form of an order to defendants to either expropriate or release the land for development.

The action is based on the Civil Rights Act, 42 U.S.C.A. §§ 1983–1985, alleging that the actions of defendants are unreasonable, oppressive and discriminatory, and have resulted in the deprivation of its property under color of state law. Jurisdiction is invoked under 28 U.S.C. §§ 1331–1343 and the matter in controversy is said to exceed $10,000.

After several motions, the complaint was amended on May 28, 1967, so as to allege that plaintiff is a Puerto Rico corporation and substitute the present chairman of the Planning Board for his predecessor. Finally, on August 28, 1970, the complaint was dismissed as to the two agencies involved herein with the individual defendants remaining in the case.

The case is now before the Court on a motion for summary judgment filed by the remaining defendants on March 2, 1971, and a cross-motion for summary judgment and reply, filed by plaintiff on March 30, 1971.

It is defendants' contention that plaintiff has failed to exhaust the administrative remedies available to it; that the cases decided by the Supreme Court of Puerto Rico in Heftler International, Inc. v. Junta de Planificación, 142 Colegio de Abogados, 1970, decided on December 15, 1970, P.R.R., and Ana Margarida Vda. de Iturrequi v. Junta de Planificación, 143 CA, 1970, decided on December 16, 1970, P.R.R., are dispositive of the issues herein; and that this Court should refrain from ruling to the contrary in deference to the Commonwealth courts.

Plaintiff alleges in turn that it does not have to exhaust the administrative remedies; that the *Margarida* and *Heft-*

*ler* cases are not applicable herein; and that because of certain correspondence with employees of the agencies originally in the case, which the corporation has filed herein, further administrative proceedings would be fruitless. Plaintiff further submits that on the merits of unopposed affidavits submitted, judgment should be entered in its favor.

■■■ To put the issues into proper perspective, we wish to point out at the outset that in actions under the Civil Rights Act, it is the federal law which determines whether the exhaustion of state administrative remedies is required. This is a matter of federal law and policy since it goes to the access to be given to litigants to come into the federal courts under a federal statute. The decisions by the Supreme Court of Puerto Rico serve only to illustrate the remedies that may be available to litigants; these decisions may determine whether the exhaustion of those remedies should be required only under the laws of Puerto Rico and not when the remedy sought is federal in nature.

Another factor which has caused confusion to the parties herein is the paragraph in this Court's decision in Inmobiliaria Borinquen, Inc. v. García Santiago, 295 F.Supp. 203 (1969), at page 206, which reads:

> Another argument advanced in the motions to dismiss is that the Plaintiff has not exhausted administrative remedies allegedly available in the jurisdiction of the Commonwealth. In view of the decisions rendered by the Supreme Court of the United States in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), McNeese v. Board of Education et al., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed. 2d 622 (1963), and Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), it seems clear that exhaustion of remedies in the state or Commonwealth jurisdiction is not a prerequisite to the invocation of the proper Federal jurisdiction in civil rights cases.

The time has come to inquire further into the problem of whether the exhaustion of state administrative remedies is required or not in civil rights cases. This is a complex issue and at this time cannot be summarized in one short paragraph.

As far back as 1939 the Supreme Court of the United States in Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939) expressed that the judicial remedies of the states, vis a vis the administrative remedies, need not be exhausted before recourse is had to the federal courts. In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), mentioned in the paragraph quoted from *Inmobiliaria* the court's manifestations as to the exhaustion of state remedies were directed to an allegation by defendants that a simple remedy was available to plaintiffs in the courts of the state. The Supreme Court stated that recourse to the state's remedies need not be had; that the purpose of the Act was not to require recourse to a theoretically adequate remedy which is not available in practice, and that the reason for the passage of the Civil Rights Act was that because of prejudice and bias, state laws might not be enforced. *Monroe* was concerned with judicial and not administrative remedies.

■ In McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L. Ed.2d 622, cited in the paragraph from *Inmobiliaria*, the Supreme Court makes it clear that the assertion of a federal claim under the Civil Rights Act does not have to await an attempt to vindicate the claim in the state courts. Exhaustion of administrative remedies may be required when it is clear that the administrative remedy is sufficiently adequate to preclude prior resort to a federal court. The remedy in *McNeese* was found inadequate since all it could accomplish was to give plaintiffs a suit in the state courts.

The last case cited in the paragraph from *Inmobiliaria* is Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), which is, in essence,

the refusal by the Court to apply the abstention doctrine when a state statute has a chilling effect on first amendment rights and is of no aid to the understanding of the issues herein.

The cases that have cast doubt on the status of the doctrine of exhaustion of state administrative remedies are Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967) (per curiam), King v. Smith, 392 U.S. 309 at 312 n. 4, 88 S.Ct. 2128, 20 L.Ed.2d 1118, and Houghton v. Shafer, 392 U.S. 639, 88 S. Ct. 2119, 20 L.Ed.2d 1319. *Damico* was an appeal from a three-judge court's dismissal of a civil rights action for failure to exhaust adequate administrative remedies. The Court cited from *McNeese* as follows: "relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided [an administrative] remedy," *id.*, 373 U.S. at 671, 83 S.Ct. at 1435. See Monroe v. Pape, 365 U.S. 167, 180–183, 81 S.Ct. 473, 5 L.Ed.2d 492.

As may be seen, the brackets are supplied by the Court, as is pointed out in the Second Circuit opinion in Eisen v. Eastman, 421 F.2d 560, 569 (1969), the *McNeese* opinion portion cited in *Damico* related to state judicial, not administrative remedies.

The note in *King* states that plaintiffs are not required to exhaust administrative remedies where the constitutional challenge to a statute is sufficiently substantial so as to require the convening of a three-judge court. Citing *Damico*, *McNeese* and *Monroe*, the Court in *Houghton* states that exhaustion of state administrative remedies is not required where, to be successful at the administrative level, it would require that the agency violate or derogate its own regulation. Said endeavor would be futile. Therefore, the Court found *Damico* controlling.

That these cases do not represent the end of the doctrine of exhaustion of state administrative remedies is illustrated in Eisen v. Eastman, where at pages 568 and 569, the Supreme Court cases are put in their proper perspective. After a careful analysis of the opinions, the Court concludes:

> Despite the breadth of some of the language, particularly in the *Damico* per curiam, we thus read these decisions as simply condemning a wooden application of the exhaustion doctrine in cases under the Civil Rights Act. Exhaustion of state administrative remedies is not required where the administrative remedy is inadequate, as in *McNeese*, or where it is certainly or probably futile, as in *Damico*, *Smith* and *Houghton*. A quite different situation would be presented, for example, when a complaint alleged that a subordinate state officer had violated the plaintiff's constitutional rights by acting because of bias or other inadmissible reasons, by distorting or ignoring the facts, or by failing to apply a constitutional state standard, and the state has provided for a speedy appeal to a higher administrative officer, as New York City has done here. We shall need much clearer directions than the Court has yet given or, we believe, will give, before we hold that plaintiffs in such cases may turn their backs on state administrative remedies and rush into a federal forum, whether their actions fall under the Civil Rights Act or come under general federal question jurisdiction.

The First Circuit has referred to the doctrine in several recent cases. In Dunham v. Crosby, 435 F.2d 1177, the Court states that exhaustion of state administrative remedies is required unless the Government itself has hindered it. It cites *Eisen* to show that even the foremost proponents of the doctrine realize that it must not be applied woodenly. Drown v. Portsmouth School District, 435 F.2d 1182, 1186, n. 10, flatly states that the First Circuit normally requires resort to an available administrative hearing prior to the initiation of a section 1983 action.

In Beattie v. Roberts, 436 F.2d 747 (1971), the Court does not allow "de-

fendants who short circuit a plaintiff's statutory procedural rights" to raise the lack of exhaustion of state administrative remedies. The purpose of exhaustion is stated to be to give the administrator a chance to view the issue in the light of the facts and the arguments put forth in a formal hearing.

Defendants, in alleging plaintiff's failure to exhaust administrative remedies, request that the case be remanded so that plaintiff may: "(1) return with their case to the Planning Board of Puerto Rico and request the reconsideration of the action taken by the Planning Board (2) take all the necessary steps to insure that the Planning Board will state the reasons for having 'frozen' plaintiff's property and also what cause of action is the Planning Board going to take with respect to this case" (P. 1, Motion for Summary Judgment, filed March 2, 1971).

In their brief defendants state that before filing this action plaintiff should have:

"1. Request(ed) a reconsideration of the Planning Board's ruling in relation with its property.

2. Appeal(ed) to the Board of Appeals as stated in 23 L.P.R.A. 28.

3. Request(ed) reconsideration of the adverse ruling of the Board of Appeals, 23 L.P.R.A. 28(c).

4. Request(ed) a rezonification of its property." (P. 1, Memorandum of Law, filed May 7, 1971.)

In support of their contentions they cite the *Heftler* and *Margarida* cases. In the *Heftler* case, the owner of a parcel of land instituted an action characterized by the Supreme Court of Puerto Rico as being for "inverse condemnation" (Pp. 7–8 of the opinion). In that case the land had been "frozen" for seven years. Plaintiff therein acquired the land in 1965 when it was already frozen. In 1965 he inquired from the Planning Board whether the conditions which gave rise to the "freeze" were still valid and submitted a consultation for a construction project. In 1966 the Board in-

formed him that the "freeze" would continue and that the Public Works Department should proceed to its acquisition. The action ensued and was dismissed by the Superior Court for failure to exhaust the administrative remedies. The Supreme Court of Puerto Rico confirmed stating that the following remedies were available:

1. Request reconsideration of the Board in the consultation.

2. Appeal to the Board of Appeals, following 23 L.P.R.A. 28.

3. Reconsideration thereof, 23 L.P. R.A. 28(c).

4. Request the rezoning of the land.

In the *Margarida* case, where the property had been "frozen" for 14 years, the Court stated that an appeal had not been taken from a denial by the Board in a consultation for ubication. Since in the Board's resolution it passed on the use of the land, the plaintiff could have requested a reconsideration of the resolution and could have appealed to the Appeals Board under 23 L.P.R.A. 28. The Court stated further that the conditions which would justify judicial review without exhaustion were not present since there was no danger of an imminent and real damage to plaintiff and the administrative action was not futile.

The *Heftler* and *Margarida* cases and the standards promulgated therein are distinguishable from this case. In the first place, from the cases we have discussed, it is clear that we are dealing here with a separate and distinct remedy where the application of the doctrine of exhaustion of administrative remedies is applied only to give the administrative agency the opportunity to correct its possible mistakes without the necessity of the federal court's intervention. This is not an action for review of the administrative agency's decision, but, rather, it is an action to correct an alleged violation of the constitutional rights of the plaintiff. Secondly, it is possible that remedies which are found adequate when exhaustion is required in the Commonwealth courts, may not be

adequate when compared to the standards of exhaustion in civil rights cases. The Commonwealth courts may decide to refuse review and give finality to the decision of the administrative agency by requiring that the plaintiff explore the whole gamut of appeals and administrative procedures. In civil rights cases, we cannot take such a wooden approach and must require exhaustion only insofar as its purpose in civil rights is met. Any further requirements would defeat the purpose of this legislation.

Applying these standards to the present case, we note that the action complained of is the "freezing" of land by designating it for public use and keeping it frozen for seven years.

To dismiss this case now, for failure to request reconsideration of the Planning Board's resolution of October 31, 1962 and December 31, 1962 and for failing to appeal therefrom would be a wooden application of the doctrine of exhaustion. At the time the resolutions were issued, plaintiff or its predecessor in title did not have the reason to complain which it now appears to have. The corporation did not know that the determination to "freeze" made by the Board would remain without change for over seven years.

Additionally, it would be extremely onerous to require them to submit a new proposal for approval for a development of the land when, as has been represented to the Court by plaintiff without opposition by defendants, in the present stage of the proceedings it is almost certain that the land will be expropriated. What is uncertain is the date of expropriation.

█ For the aforesaid reasons, the Court finds:

1. That the remedies alleged to have not been exhausted in this case are not sufficiently clear and adequate to preclude resort to the federal courts.

2. That there is no need for further exhaustion in this case since the defendants have had ample time to correct any possible oversights or inequities that may have been suffered by plaintiff.

3. That it would be unduly onerous and inequitable to dismiss this complaint for lack of exhaustion of administrative remedies.

█ As to the plaintiff's motion for summary judgment, the Court finds that it would unduly penalize the defendants herein to decide on the merits without a reply from them. There is a strong public interest in this litigation which warrants that this Court give defendants an opportunity to plead to that motion. It seems as if defendants overlooked that the plaintiff's motion required a reply, and, while not approving defendants' action, the Court will give them an opportunity to reply on the merits.

It is therefore ordered that the motion for summary judgment filed by defendants on March 2, 1971 be, and it is hereby, denied.

The motion filed by plaintiff on March 30, 1971, insofar as it requests summary judgment is held in abeyance until plaintiff:

1. Files a statement of the facts, sufficient for judgment in its behalf, which it feels are uncontested.

2. Files a memorandum of law in support of its position on the merits.

3. Files any other documents which counsel may consider of aid to the Court in reaching a decision on the merits.

Defendants are granted thirty (30) days to reply from the date of filing of the aforesaid documents.