**HOTEL COAMO SPRINGS, INC., Plaintiff,**

v.

**Rafael HERNANDEZ COLÓN, Governor of the Commonwealth of Puerto Rico, et al., Defendants.**

**Civ. No. 74–598.**

United States District Court, D. Puerto Rico.

July 9, 1976.

Francis, Doval, Colorado & Carlo, San Juan, P. R., R. Elfrén Bernier, Coamo, P. R., Leopoldo Bonilla Velez, Ponce, P.R., for Hotel Coamo Springs, Inc.

Edelmiro Salas García, Hato Rey, P. R., for Abimael Hernández.

Roberto Armstrong, Jr., Ronaldo Rodríguez Ossorio, Dept. of Justice of P. R., San Juan, P. R., for defendants.

## OPINION AND ORDER

TOLEDO, Chief Judge.

On May 22, 1974, the plaintiff Hotel Coamo Springs, Inc., filed the present action against the Honorable Rafael Hernan-

dez Colón, Governor of the Commonwealth of Puerto Rico, and various other public officers of the Commonwealth.[1] The complaint states that it is filed pursuant to Title 42, United States Code, Section 1983 and Title 28, United States Code, Section 2201, and that it requests damages and declaratory relief to redress the deprivation under color of state law of the rights secured plaintiff under the Fifth and Fourteenth Amendments of the Federal Constitution. The complaint specifically alleges that the defendants have deprived the plaintiff of due process and the equal protection of the laws by illegally freezing plaintiff's project to develop a certain parcel of land into a resort development and by unconstitutionally expropriating a certain portion of such land making it useless for its originally intended purpose without just compensation.

The defendants answered the complaint by filing a motion to dismiss on July 8, 1974, alleging that this Court should stay its hand under the abstention doctrine and that the complaint failed to "state facts upon which an action in equity can be entertained".

On September 18, 1974, this Court, on defendants' motion, declared that since the statute mandating the freezing and expropriation of plaintiff's property was not of statewide applicability, the unconstitutionality of such statute could be decided by a single judge of this Court. *Board of Regents of the University of Texas v. New Left Education Project*, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972).

On November 19, 1974, the parties entered into a stipulation of facts upon which there is no controversy between the parties, and on July 22, 1975, the parties submitted their documentary evidence to the Court. Both parties have submitted memoranda of

law on all the issues involved in the case and have submitted the case for a decision on the jurisdictional aspects and the merits. Plaintiff has requested a subsequent evidentiary hearing on the issue of damages.

We will first dispose of defendants' contention that the doctrine of abstention precludes a decision by this Court on the constitutionality of the challenged statute of the Legislature of the Commonwealth of Puerto Rico in this case.

### ABSTENTION

The statute in question is a Joint Resolution of both Chambers of the Legislature of Puerto Rico approved on May 31, 1973, for the state purpose of declaring "a public utility" twenty-five (25) "cuerdas" of land in which exist the buildings and structures and the thermal waters known as Coamo Springs (Los Baños de Coamo); to declare that it is the public policy the establishment of a recreational and vacationing center in Coamo Springs; to establish the procedures necessary for the acquisition and possession or domain of said buildings and lands; and for the preparation of a plan for the use according to the purposes of this resolution.

The Coamo Springs[2] and the 25 cuerdas of land on which they are located are then declared by the resolution to be of public utility. Section 2 of the Resolution orders the Secretary of the Treasury in consultation with the Director of Tourism and the Parks Administrator to select the lands and appraise them together with the buildings located thereon "for the purpose of acquiring said buildings and lands through eminent domain or for the purpose of acquiring their possession by lease for a minimum term of twenty-five (25) years".

The resolution is clear on at least two important points: the springs and the land

1. Francisco de Jesus Schuck, Secretary of Justice, Commonwealth of Puerto Rico; Rafael Alonso Alonso, President, Commonwealth Planning Board; Pedro Mora, Francis Conway, Luis Negron Zayas, members, Commonwealth Planning Board; Salvador Casellas, Secretary of the Treasury, Commonwealth of Puerto Rico; Emilio Casellas, Administrator, Public Recreation and Parks Administration; Robert Bouret, Director, Tourism Development Company.

2. The Coamo Springs are thermal springs which are unique in Puerto Rico. Finding of Fact Number 2, *infra*.

are declared of public utility, and the Secretary of the Treasury is ordered to appraise the mentioned *land* and *buildings* for purposes of expropriating them. No authorization is contained in such resolution for any further expropriation or compensation than that of the 25 cuerdas of land and the buildings located on it and their value. The declaration of public utility is definite and does not provide for compensation of any vested rights.

In *Arias v. Examining Board of Refrigeration and Air Conditioning Technicians,* 353 F.Supp. 857 (D.C.P.R.1972), a three judge court refused to apply the abstention doctrine to a situation where the Puerto Rican statute in question was clear and could not be interpreted constitutionally. The Court (Cancio, J.) states at 859:

> "[2–4] Another preliminary issue raised by the defendants is the applicability of the doctrine of abstention in this case. Since its expression in the case of *Railroad Commission v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), *it has been well settled that the doctrine is applicable only when the state court construction of the state law in question may obviate the need for a decision on tthe federal constitutional issues. Thus, some degree of uncertainty and the possibility of variance in the interpretation of the statute must be present to justify the abstention of a federal court.* The doctrine is not properly invoked when the purpose is to have the local courts test the validity of the statute in the light of the federal constitutional claims. Its purpose is to allow the state or Commonwealth courts to interpret the statute in the light of the federal claim, so that a decision on federal constitutional grounds might be avoided." (Emphasis added).

This case was followed in *Pearson Yacht Leasing Co. v. Massa,* 363 F.Supp. 1337,

1339 (D.C.P.R.1973), in a three judge Per Curiam opinion.[3]

The present statute is clear on its face. The land and buildings are declared to be of public utility and the appropriate government official is authorized and ordered to expropriate, appraising only the land and buildings which constitute the 25 cuerdas on which the springs are located. No compensation or expropriation is mandated with respect to the rest of the plaintiff's land and the project and actual construction already accomplished on them. We do not see how the Supreme Court of Puerto Rico could reasonably interpret this statute to mean anything else. It is up to this Court to decide whether or not the clear precepts of this statute violate Federal constitutional guarantees. It is incumbent upon us therefore to determine, on the merits, whether or not Joint Resolution 48 is either unconstitutional on its face or as applied to the plaintiff.

## FINDINGS OF FACT

The Court, considering the Stipulation of Facts filed on November 19, 1974, by all parties submitting to the Court all the facts upon which there is no dispute, the documentary evidence submitted by the parties on July 22, 1975, and the pleadings of the parties, enters the following findings of fact in this case:

1. On April 2, 1958, Dr. Eduardo Maldonado Sierra, who later became a shareholder in plaintiff's corporation, acquired a 227 cuerdas parcel of land on which the buildings and thermal springs commonly known as "Los Baños de Coamo" (hereinafter Coamo Springs), are located. On August 23, 1963, the plaintiff's corporation was formed with a principal purpose of business to develop, construct and build a recreational and tourist center on the real estate previously mentioned. This land was transferred to the plaintiff on March 8, 1967, and

**3.** This decision was reversed on other grounds in *Calero Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). The Supreme Court in this case reaffirmed the application of the abstention doctrine generally to Puerto Rico, but did not apply it and decided the case on its merits.

was duly registered in the Registry of the Property in the plaintiff's name. On said parcel of land there are located thermal springs which are unique in Puerto Rico, in that they offer the only known therapeutic hot springs on the Island. (Stipulations of Fact 1, 2, 3 and 4; Exhibits 22, pp. 3, 33, and 30).

2. On February 12, 1963, the plaintiff retained the services of Passalacqua & Associates to prepare the necessary planning, architectural and economic studies to develop the real estate in question into a recreational and tourist center. Said firm prepared the plans, blueprints, planning and economic studies essential to the development of the project. These plans and the necessary proposals were submitted to the Planning Board of the Commonwealth of Puerto Rico to obtain the proper approvals for the development of the project. On May 31, 1966, the Planning Board through a document entitled "Informe Número 66–D–002–F", authorized the plaintiff to prepare the construction plans for the project in question. This authorization encompassed the construction of the following facilities: a golf course, tennis courts, swimming pools, public facilities, hotel facilities, and various accessory facilities. (Stipulations of Fact 5, 6 and 7).

3. Subsequently, on November 29, 1966, the Planning Board authorized the plaintiff's construction plans for the following facilities: an assembly hall, dining hall and bar, casino, drugstore, barber shop, gymnasium, swimming pools, tennis courts, hotel facilities (80-room capacity), a parking lot, and various accessory facilities. Final construction plans were presented subsequently for the construction of the golf course, club house, hotel area and villas, and other residential facilities. (Stipulations of Fact 8, 9).

4. On October 15, 1969, the plaintiff presented before the Planning Board a petition for authorization to construct the club house of the golf course, and later also filed a petition for the construction of the foundations of the main buildings of the hotel core. On August 22, 1967, the Board issued construction permits for the foundations of the mentioned facilities (Exhibits 13 and 15). The construction of the golf course was approved and these facilities have been completed. They are presently not in use. (Stipulations of Fact 9, 11).

5. On April 22, 1967, the Government Development Bank of the Commonwealth of Puerto Rico issued the plaintiff a commitment letter to lend the plaintiff the sum of $817,500 to finance the development of the facilities referred to. On May 26, 1967, said institution increased the commitment to $1,226,500. This commitment was cancelled by the Government Development Bank on March 26, 1970. (Stipulation of Fact 10).

6. After the cancellation of the financial commitment by the Government Development Bank, plaintiff was forced to reevaluate the scope of the project and to seek alternative sources of financing. To that end and on November 4, 1972, it entered into an agreement with Interamericas Turnkey Development Corporation for the evaluation of the project and the seeking of the needed financial support and management to continue developing the project. (Stipulation of Fact 12).

7. Since early 1971, all the concerned governmental agencies of the Commonwealth of Puerto Rico were notified that the project was being reevaluated and their pertinent endorsements were requested. At no time, and with the exceptions hereinafter referred to, has there been any denial by any agency with jurisdiction over the project to the proposed modifications to the original plans. (Stipulation of Fact 12).

8. Plaintiff's efforts to obtain the needed financing were successful. On February 13, 1973, it obtained a binding financial commitment from North American Mortgage Investors, ("North America"), a Massachusetts Trust, for the amount of $840,000 as a land loan, and $5,475,000 as a construction loan. On March 30, 1973, the plaintiff and North American executed a loan agreement for the amount of $840,000. Personal guarantees were given by stock-

holder Maldonado Sierra and his wife in addition to a personal guarantee given by a Mr. and Mrs. Abimael Hernandez on this loan. (Stipulation of Fact 13).

On April 19, 1973, plaintiff and North American executed a Pledge Agreement whereby plaintiff pledged to North American a mortgage note pursuant to the mentioned loan agreement. Also on this date the plaintiff executed a deed constituting a mortgage over the real estate on which the project was to be developed to guarantee the $840,000 promissory note. (Stipulation of Fact 13).

9. The total investment of the plaintiff up to June 30, 1973, has been the sum of $2,000,306. (Stipulation of Fact 15).

10. The total investment by plaintiff in the project to date has been in excess of $3,000,000. (Stipulation of Fact 16).

11. The total contemplated investment in the project will be approximately $18,-000,000. (Stipulation of Fact 14).

12. On May 31, 1973, the Legislative Assembly of Puerto Rico approved Joint Resolution Number 48.[4]

13. The 25 cuerdas of land referred to in the Joint Resolution are a part of and are situated on plaintiff's land.

14. On November 14, 1973, and using Joint Resolution 48 as a basis, the Planning Board of the Commonwealth of Puerto Rico denied a proposal submitted by plaintiff on August 16, 1972, to construct 200 villas on plaintiff's real estate. This denial was rendered eighteen months after the request had been filed. The reason given for the denial was that Joint Resolution 48 declared plaintiff's property a "public utility". (Stipulation of Fact 20).

15. The denial of the Planning Board was reconsidered by the Board in full and denied. This decision was appealed to the Appeals Board which also denied the mentioned proposal. (Exhibit 52, Stipulation of Fact 20).

16. The proposed and partially terminated project of the plaintiff on its property was based upon the use and development of the unique thermal springs known as "Los Baños de Coamo". (Exhibits 2, 22, 30, 32, at pp. 3 and 46).

4. "To declare a public utility. twenty-five (25) 'cuerdas' of land in which exist the buildings and structures and the thermal waters known as Coamo Springs ('Los Baños de Coamo'); to declare that it is the public policy the establishment of a recreational and vacationing center in Coamo Springs ('Baños de Coamo'); to establish the procedures necessary for the acquisition and possession or domain of said buildings and lands; and for the preparation of a plan for the use according to the purposes of this resolution.

"Be it resolved by the Legislative Assembly of Puerto Rico:

"*Section 1.*—It is declared to be the public policy of the Commonwealth of Puerto Rico to utilize Coamo Springs ('Los Baños de Coamo') as a center for recreation and vacationing for the enjoyment of the people of Puerto Rico. Consequently, they are declared as public utility the buildings and thermal springs known as Coamo Springs ('Los Baños de Coamo') and twenty-five (25) 'cuerdas' of land, that include the situs wherein said buildings are located. It is declared also that it is necessary to acquire the possession or domain of said buildings and lands for the purpose of this Resolution.

"*Section 2.*—The Secretary of the Treasury in consultation with the Director of Tourism and the Administrator of Parks and Public Rec-

reation, shall make the appraisal of the buildings and shall elect and appraise the lands, with the purpose of acquiring said buildings and lands through eminent domain or for the purpose of acquiring their possession by lease for a minimum term of twenty-five years.

"*Section 3.*—In consultation with the Administrator of Parks and Public Recreation, the Director of Tourism will design a plan presenting the basis for the use of Coamo Springs ('Los Baños de Coamo') and the adjoining lands for the establishment of a recreational and vacationing center for the enjoyment of the people of Puerto Rico.

"*Section 4.*—Within sixty (60) days of the approval of this Resolution the Secretary of the Treasury will render to the Legislative Assembly of Puerto Rico and to the Governor of Puerto Rico a report containing his efforts, according to what it is established in section 2 of this resolution, and containing his recommendations and his requests for funds. Within said term the Director of Tourism will submit to the Legislative Assembly and to the Governor of Puerto Rico the plan referred to in section 3 of this resolution. Both public officials may submit jointly their respective efforts.

"*Section 5.*—This resolution will have immediate effect after its approval."

17. Plaintiff is presently faced with foreclosure proceedings on the mortgages mentioned in finding of fact 8, supra. (Uncontested pleading of plaintiff in Memorandum of Law dated August 25, 1975).

18. The Commonwealth of Puerto Rico has initiated condemnation proceedings in Case No. E–75–826 for the expropriation of 24.4142 cuerdas of land equivalent to the 25 cuerdas of land mentioned in Joint Resolution No. 48. The Commonwealth has consigned the sum of $195,310.00 as just compensation for the acquisition of this property. (Uncontested pleading of plaintiff in Memorandum of Law, dated August 25, 1975).

## THE MERITS

The Government's memorandum of law in support of its motion to dismiss covers three different defenses numbered A, B, and C, under which any one of them the complaint should not prosper. These contentions are that: A) Joint Resolution No. 48 of May 31, 1973, is constitutional; B) Complaint fails to state a cause of action against appearing codefendants; C) This Court lacks jurisdiction on grounds of sovereign immunity. Since the arguments covered in B and C interrelate one with another, the Court will dispose of them before going on to the Constitutionality of Joint Resolution No. 48.

The Government's memorandum of law misses its mark when it alleges under headings "B" and "C" that in the present case "it is clear that the allegations are directed to different governmental bodies and agencies and not to any acts of the named defendants". And further on in its memorandum counsel for the Government repeat: "the allegations raised by plaintiff are directed to the Commonwealth of Puerto Rico and its agencies instead of any specific acts or the named defendants".

The pertinent allegations of the complaint against the codefendants in their individual capacity are found in Paragraphs Four and Twenty. Paragraph Four mentions the President and Members of the Planning Board of the Commonwealth of

Puerto Rico and sets out their individual names. It also includes the Governor of the Commonwealth of Puerto Rico, as having direct jurisdiction over the Planning Board, and the Secretary of Justice of Puerto Rico. The other persons individually named are all government officials charged with specific duties under Joint Resolution Number 48.

Paragraph Twenty, contrary to the Government's interpretation, sets forth specific conduct carried out by the Planning Board's Members and its President in their official capacities. The denial by the Planning Board of the proposal submitted to it by plaintiff to construct two hundred (200) villas on its property was based solely on Joint Resolution No. 48. This denial as alleged in the complaint did not follow adequate procedures within the Planning Board to dispose and resolve this type of case. Finally, Paragraph Twenty alleges that by their conduct the defendants' Members of the Planning Board denied to plaintiff the use of its property without due process of law. As in the case of *Inmobiliaria Borinquen, Inc. v. Garcia Santiago*, 295 F.Supp. 203 (D.C.P.R.1969), the Court has before it "a Complaint which alleges acts of Defendants in their official capacities which have paralyzed Plaintiff's property and property rights without just compensation, and, consequently, without due process . . .", *supra* at 205. Contrary to what the Government believes, the present action is not against the Commonwealth of Puerto Rico, but against officials of the Commonwealth of Puerto Rico, who acted in their official capacity, pursuant to Joint Resolution No. 48. It therefore must follow that the argument of Sovereign Immunity is inapposite inasmuch as said defense is not available to Commonwealth officials purporting to act in their official capacity. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Inmobiliaria Borinquen, Inc.*, supra. The complaint alleges that a taking of the plaintiff's property without just compensation has been accomplished by the acts complained of. No more and no less is needed to bring this case under the

Civil Rights Act. The Court will now move on to discuss the main controversy of this case, namely, whether Joint Resolution No. 48 constitutes a taking of plaintiff's property without due process of law.

The plaintiff alleges that Joint Resolution No. 48 constitutes a taking of its property without just compensation and constitutes a denial of due process of law. Joint Resolution No. 48 essentially implements a two step procedure in relation to the treatment afforded plaintiff's land and property. After stating that the purpose of this legislation is to establish a recreational and vacationing center in Coamo Springs, Joint Resolution 48 first states that 25 cuerdas of plaintiff's land on which the springs are located are declared of "public utility". No notice nor an opportunity for a hearing was afforded to the plaintiff when the Legislature of Puerto Rico made such declaration of public utility. The law then states that the Secretary of the Treasury *shall*, in consultation with other government officers, make an appraisal of the 25 cuerdas and the buildings on it in order to proceed with the condemnation of said property, or to acquire the possession of the property by a lease agreement for a minimum period of twenty-five (25) years.[5]

Prior to the enactment of Joint Resolution 48, plaintiff had expended considerable efforts and resources towards the development of the 227 cuerdas of land. (See: Findings of Fact, supra). As of June 30, 1975, the plaintiff had invested over $2,000,-000 in the project, excluding the value of the land. The prime factor which motivated the initiation and development of plaintiff's project to develop its land into a tourist resort, was the existence on its land of the Coamo thermal springs. In fact, the Planning Board in its authorization to plaintiff to proceed to prepare the construction plans for the project (Exhibits 2 and 30) recognized that plaintiff's project was to be constructed "around the famous natural springs of thermic and sulfurous waters and of other attractions that have converted the sector into one of great interest and popularity as much for the residents of our Island as for foreigners". The plaintiff's final construction plans were approved and construction of the golf course, one of the project's contemplated attractions, was completed.

It was after plaintiff had incurred substantial expense to develop its project, relying on the governmental approvals it had obtained, that Joint Resolution 48 was enacted, freezing 25 cuerdas of plaintiff's land upon which the thermal springs were located. There can be no doubt, under the laws of the Commonwealth of Puerto Rico, that the plaintiff, at that point in time, had a vested right to pursue its project in conformity with the approvals it had obtained and could have obtained in accordance with the prior approvals granted it. In *Phi Delta Pi v. Planning Board*, 76 P.R.R. 547 (1954), the Supreme Court of Puerto Rico decided that once a party has obtained a building permit from a duly authorized officer and proceeds to act on the faith of it and incurs material expenses, he then acquires a vested right which may not be destroyed by virtue of a revocation of the permit in question. The Court stated at 553:

> "It is true that the universally accepted rule, which we adopt, is that where a permit has once been granted by an officer authorized to do so and the permittee has acted thereon and incurred expenses, the right to continue construction under such permit becomes a vested right which the municipality has no right to violate by revocation or recall of the permit."

And in *State ex rel. Schroedel v. Pagels*, 257 Wis. 376, 43 N.W.2d 349, cited with approval in *Phi Delta Pi*, supra, a purchase of realty and an investment of $50,000 for plans and specifications in contemplation of building was deemed sufficient to consider

---

**5.** The practical results of Joint Resolution No. 48 is the taking of plaintiff's property for at least a minimum period of twenty five years, or forever. Plaintiff was not given an opportunity to be heard as to which alternative he would be forced to chose from. See defendants' brief at page 3.

the purchaser of the property protected against a change in zoning because of vested rights.

On November 14, 1973, and using Joint Resolution 48 as a basis, the Planning Board of the Commonwealth of Puerto Rico denied a proposal submitted by plaintiff on August 16, 1972, to construct two hundred villas on the plaintiff's property. This denial, based on Joint Resolution 48 has impeded plaintiff from putting into operation the completed golf course, and from completing the project which had been previously endorsed by the Planning Board. Plaintiff also faces foreclosure suits on the land for failure to pay the loan guaranteed by a mortgage on the land (Exhibits 50 and 60).

■■ It is not clear under what distinct aspect of the Police Power the Legislature of the Commonwealth of Puerto Rico has acted in declaring plaintiff's land to be of "public utility". While it has been clearly established that the power of a state enables it and its administrative bodies to restrict the use of land, *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), it has also been recognized that in some cases such regulations may be tantamount to a "taking" of property without just compensation. In *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), Justice Holmes stated the rule:

"The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." (at 415, 43 S.Ct. at 160).

■ The Legislature's noble purpose in enacting Joint Resolution 48 attempting to guarantee the use of the Coamo Springs for the general public, must give way to the property rights of the plaintiff if such regulation causes a substantial loss to the plaintiff without just compensation. Again Justice Holmes ably states the point:

"We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change. As we already have said, this is a question of degree—and therefore cannot be disposed of by general propositions.

.    .    .    .    .

As long recognized some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. *When it reaches a certain magnitude*, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts. The greatest weight is given to the judgment of the legislature, but it always is open to interested parties to contend that the legislature has gone beyond its constitutional power." (*Pennsylvania Coal Co.*, supra, at 413, 43 S.Ct. at 159, emphasis added.)

■ The freezing of plaintiff's land in this case has most definitively diminished its property rights, mainly the use of a valuable price of real estate which contains a valued tourist attraction, the thermal springs, and the destruction of a multimillion dollar project which had as its core the use of thermal springs. The magnitude of the diminution is sufficient to constitute a "taking", especially in view of the long standing rule in this jurisdiction that plaintiff had a vested right[6] to continue its project because of the approvals obtained

---

**6.** The defendants state in their Memorandum of Law dated August 21, 1975, in the last paragraph of page four, that "whatever partial approval for development granted to plaintiff by the Planning Board of Puerto Rico prior to May 31, 1973, *was taken away by the Legislature*, with the approval of Joint Resolution 48.

Whatever *vested rights* plaintiff could have had was expressly denied him by the express will of the Legislative Assembly. Furthermore, when as plaintiff alleges on paragraph 20 of the complaint, the Planning Board denied a proposal submitted by him based on Joint Resolution 48, there was no other course of action to take by

from the Government and substantial expenses incurred pursuant to such approvals. *Phi Delta Pi v. Planning Board*, 76 P.R.R. 547 (1954); see also: *Vernon Park Realty v. City of Mt. Vernon*, 307 N.Y. 493, 121 N.E.2d 517; *City of Plainfield v. Borough of Middlesex*, 69 N.J.Super. 136, 173 A.2d 785 (1961); *Arverne Bay Construction Co. v. Thatcher*, 278 N.Y. 222, 15 N.E.2d 587 (1938); 1 Rathkopf, *The Law of Zoning and Planning*, Ch. 5 (3d Ed.); 1 Yokley, *Zoning Law and Practice*, Section 2–16 (3d Ed.); Durham, *A Legal and Economic Basis for City Planning*, 53 Col.L.Rev. 650; Susna, *New Developments in Zoning Law*, reported at "Proceedings, Eighth Institute of Planning and Zoning" 1970, at p. 31.

■ Whether or not Joint Resolution 48 provides for adequate compensation for the unconstitutional regulation described above in providing for condemnation procedure for the 25 cuerdas will be considered below. We would first like to consider plaintiff's argument that the declaration of "public utility" contained in Public Resolution 48 is akin to the "p" zoning and freezing of land considered by this Court in *Inmobiliaria Borinquen v. Garcia Santiago*, 295 F.Supp. 203 (D.C.P.R.1969), and in *Vistamar, Inc. v. Vazquez*, 337 F.Supp. 375 (D.C.P.R.1971). We agree with plaintiff that Joint Resolution 48 freezes its land in a manner similar, if not identical, to a "p" zoning generally applied in Puerto Rico, (see: Zoning Regulation 7, approved on February 7, 1970 and prior Zoning Regulation No. 4, 23 R.R.P.R. § 9–401), and that such freezing of land may not continue for an unreasonable period of time. *Heftler International v. Planning Board*, 99 P.R.R. 467 (99 D.P.R. 471) (1970); *Inmobiliaria Borinquen v. Garcia Santiago*, supra; *Vistamar, Inc. v. Vazquez*, supra. Also, if the purpose of the freezing were to depress the value of the property so that the Commonwealth of Puerto Rico could at some future date acquire it for its governmental uses at a depreciated market price, then we could

the Board. If the Planning Board had not denied plaintiff's projected development, it would have acted against the will of the Legislative

be faced with an improper use of the zoning power which could constitute a taking of property without just compensation. *Robertson v. City of Salem*, 191 F.Supp. 604 (D.C.Or.1961). However, we need not consider these problems since the Commonwealth of Puerto Rico has already filed condemnation proceedings and has consigned the sum of $195,310 as just compensation for 24.4142 cuerdas of land equivalent to the 25 cuerdas mentioned in Joint Resolution 48.

The problem then is determining whether or not Joint Resolution 48 provides for just compensation for the taking of plaintiff's property and its vested rights to develop its project.

■ The availability and applicability of the Civil Rights legislation against the possible misuses of the power of eminent domain has already been established. *Progress Development Corporation, et al. v. Mitchell, et al.*, 7 Cir., 286 F.2d 222. Recovery of damages in a condemnation proceeding is not limited to instances of actual invasion of land itself. Damages may be recoverable by evidence of a direct visible disturbance of existing rights which an owner possesses in connection with his property and which give additional value thereto and by added evidence that the owner has sustained special damages with respect to his property. Levey, *Condemnation in U.S.A.*, § 24, p. 259. Damages may be recovered in an eminent domain proceeding for property not actually taken, if the property involved and the condemned land are "contiguous", that is, that they are either physically joined as a single unit or so inseparably connected in use that the taking of one will necessarily and permanently injure the other. Levey, *op. cit.*, p. 261; *Commonwealth v. Fonalledas*, 84 P.R.R. 552 (1962); *United States v. 257.654 Acres of Land . . .*, 72 F.Supp. 903 (D.C.Haw. 1947); *City of Chicago v. Equitable Life Assurance Soc. of the U. S.*, 8 Ill.2d 341, 134 N.E.2d 296 (1956); *City of Quincy v. V. E.*

Assembly and in violation of the provisions of Joint Resolution 48 of May 31, 1973."

*Best Plumbing & Heating Supply Co.*, 17 Ill.2d 570, 162 N.E.2d 373 (1959).

 Joint Resolution 48 merely provides for compensation for the value of the land and buildings contained within the 25 cuerdas.[7] It does not provide for any compensation to the vested rights of the plaintiff in developing its total project with the prized thermal springs as its core. It does not provide for any compensation to the diminution in value to the rest of plaintiff's land now deprived of the thermal springs. It does not provide for any just compensation to plaintiff for the deprival to plaintiff of the vested right obtained to develop the 25 cuerdas of land, because of the valid existing permits and the expenditure of substantial sums of money to develop its project.

IT IS THEREFORE DECREED, that Joint Resolution 48 is unconstitutional in that it constitutes a taking of plaintiff's property without adequate and just compensation and is therefore repugnant to the concept of due process of law as contained in the Fifth and Fourteenth Amendments to the Constitution. We do not question the Commonwealth's power to exercise eminent domain to further a public purpose, however, such exercise of power must provide for just compensation to those affected. The denial to the plaintiff using Joint Resolution 48 as basis, of the right to pursue its project on its land, causing substantial damages to plaintiff, was an unconstitutional denial of due process. Furthermore, the acts committed by the defendants have arbitrarily deprived plaintiff of his rights secured under the Civil Rights Act, Title 42, United States Code, Sections 1983–1985.

In making this ruling we are aware that there is "substantial ground for difference of opinion" and that the final resolution of these questions will "materially advance the ultimate termination of the litigation". Therefore, we advise the attorneys herein that this order is appealable within ten (10) days, under Title 28, United States Code, Section 1292(b).

IT IS FURTHER ORDERED, that with respect to plaintiff's claim for damages, the same will be held in abeyance until the Court of Appeals' decision on the above discussed issues.

IT IS SO ORDERED.

---

7. Joint Resolution 48, a special legislative enactment applicable only to plaintiff's land, varies substantially in terms of the object of any possible compensation and the procedure for declaration of public utility from the general Condemnation Statute of Puerto Rico, 32 L.P.R.A. 2901 et seq. This statute clearly provides for the compensation of "any interest or right" of any person in the condemned property. It also provides for notice and a hearing prior to the government's declaration of public utility. Joint Resolution 48 provides no such procedure. Under 32 L.P.R.A. 2915 the owner of a partially condemned property has a right to damages to the remainder of his property. *Commonwealth v. Fonalledas*, supra; *People v. Heirs of Rabell*, 72 P.R.R. 536 (1951); *People v. Garcia*, 66 P.R.R. 478 (1946). Joint Resolution 48 provides for no such compensation.