**Stanley D. STEARNS, Plaintiff,**

v.

**G.H. SMITH, Charles R. Haile Associates, Inc., Defendants.**

**Civ. A. No. H–78–1262.**

United States District Court, S.D. Texas, Houston Division.

Sept. 3, 1982.

Donald Gunn, Gunn & Lee, Houston, Tex., for plaintiff.

Billy E. Lee, Asst. County Atty., Houston, Tex., for G.H. Smith.

John M. Zukowski, Byrnes, Myers, Adair, Campbell & Sinex, Houston, Tex., for Charles R. Haile Associates.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McDONALD, District Judge.

This action was tried before the Court without a jury on September 8, 9, and 10, 1981. Plaintiff seeks damages for violation of his constitutional rights under the Fifth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, and under the theories of negligence, strict liability, trespass and nuisance. He claims that defendants' modification of Spring Branch Creek by construction of a cement liner caused permanent

damage to his property and ousted him from the exclusive use, enjoyment and possession of it.

The claims against defendant Haile were dismissed at the conclusion of trial under Rule 41(b), Federal Rules of Civil Procedure. Having considered the evidence, the arguments of the parties and the applicable law, the Court concludes that judgment should be granted to defendant G.H. Smith as well. Pursuant to Rule 52, Federal Rules of Civil Procedure, the Court now enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff, Stanley D. Stearns, resides at 15 Pine Street, Harris County, Houston, Texas. He owns a piece of property approximately rectangular in shape which borders Spring Branch Creek on the south, Peck Road on the west and Pine Street on the north. It consists of Lots 1, 1A and a portion of Lot 2 of Block Number One in Pine Creek Village as surveyed by Robert Vince, platted by Ralph C. Hinton and recorded in the Map Records of Harris County, Texas, Vol. 162, at p. 34. The plat and field notes indicate that the property extends to the center line of Spring Branch Creek (PX 9).

2. Defendant G.H. Smith, sued in his individual capacity, was the Director of Harris County Flood Control District (HCFCD) from 1975 to 1979.

3. Defendant Charles R. Haile, Inc. ("Haile") is a consulting engineering business engaged primarily in municipal engineering design.

4. The HCFCD is a governmental agency, a subdivision of the State of Texas created by an act of the legislature in 1937 to consolidate thirteen drainage districts. HCFCD has responsibility for:

> control, storing, preservation, and distribution of the storm and flood waters, and the waters of the rivers and streams in Harris County and their tributaries, for domestic, municipal flood control, irrigation, and other useful purposes.

1937 Texas Gen.Laws, ch. 360 § 1 at 714. Specifically, it has the power under section 2(e) of the Act "To devise plans and construct works to lessen and control floods, to reclaim lands ... to remove obstructions natural or artificial, from streams and water courses," and under § 2(j) "[t]o do any and all ... acts or things necessary or proper to carry into effect" its powers, including the power of eminent domain.

5. Spring Branch Creek which empties into Buffalo Bayou has been subject to recurring flooding in Harris County. Voters approved a bond issue to provide flood control improvements for Spring Branch Creek.

6. The preliminary phase of the Spring Branch Creek Improvement Project was conducted by engineering consultants Turner Collie and Braden, Inc. They developed a hydrological study.

7. Defendant Haile was contracted by HCFCD in 1976 to develop a detailed design plan for the improvement of a section of the Spring Branch Creek stretching from Bingle Road to beyond Peck Road.

8. Haile designed a cement liner for the Creek which would have extended beyond Peck Road and crossed the property north of the line indicated as # 42 on PX 3. Haile informed HCFCD of the lack of recorded easements along the proposed route of the liner and indicated in its drawing of the plan "Row to be acquired" over the property east of Peck Road and north of the Creek. (PX 6)

9. Upon acceptance of the design by HCFCD, and with the exception of certain additional modifications made in response to citizen input which HCFCD solicited, Haile's relationship with HCFCD terminated.

10. Spring Branch Creek in the area of plaintiff's property, is normally ten to fifteen feet wide. In rains it reaches the level indicated as # 42 on PX 3, which is approximately one fifth of the distance from the

center line of the creek to the high bank mark.

11. The practice at HCFCD was to measure the bed of a stream as extending from the high bank line on one side of the stream to the high bank line on the other side. According to defendant Smith the high water mark usually coincided with the high bank mark. The high bank mark of Spring Branch Creek on plaintiff's property is indicated as # 18 on PX 3.

12. Defendant Smith was advised by the HCFCD Right of Way Department that no right of way was required over this property because the liner would fall within the high banks of the creek which were owned by HCFCD.

13. On January 24, 1978, plaintiff purchased for $112,000 the property including a building to the west of Peck Road and north of Spring Branch Creek. He acquired it in fee simple without any easements in favor of HCFCD and his title search indicated there were no easements in the plat as of July 19, 1978. When he purchased the property plaintiff had no notice of the proposed modification of Spring Branch Creek.

14. Plaintiff prepared plans and obtained building permits to convert the building on the property to several single-family residences; he removed the tenants and commenced construction in May, 1978.

15. Plaintiff filed this action in federal court on July 3, 1978, after he heard rumors about the construction of the cement liner in the creek. On August 30, 1978, plaintiff filed suit in state court (Action No. 78–35379) against Harris County and the HCFCD. That state action is still pending.

16. By the end of July, 1978, plaintiff had spent $40,000 on demolition and improvements.

17. After plaintiff filed suit, defendant Smith and/or HCFCD determined to end the liner at Peck Road so that it would not extend over what plaintiff claimed was his property, in order to avoid delay in construction of the liner which litigation would cause.

18. Haile was not consulted regarding HCFCD's decision to truncate the liner at Peck Road.

19. The property bordering Spring Branch Creek which plaintiff acquired has eroded over the years as a result of the action of the water in Spring Branch Creek, particularly after heavy rains. A tree fell over due to the sandy soil conditions prior to the construction of the liner. According to Defendant Smith erosion has continued for the past thirty years.

20. After construction of the liner was completed plaintiff, at a cost of $10,000 constructed a concrete wall on the top of the bank of the creek and poured concrete pilings into the bank for the purpose of mitigating anticipated erosion on the south and west borders of his property.

21. In addition, the City of Houston and itinerant contractors, who were involved in construction work in the vicinity of Peck Road and Spring Branch Creek, either at plaintiff's invitation or with his acquiescence, have dumped loads of dirt and rip rap (pieces of cement and other construction materials) on the banks on the western border of plaintiff's property thereby shoring it up. (DX 9–13)

22. HCFCD has placed fill under Peck Road beyond the liner at points indicated as # 54 on PX 3 and # # 80 and 84 on PX 4 in order to protect the Peck Road footbridge.

23. The liner accumulates a larger body of water moving at a slower rate upstream of Peck Road than existed before it was constructed. At the point at which the liner ends and the banks of the stream have been filled in and narrow, the water moves more quickly.

24. Although plaintiff stated generally that his property has settled three or four feet in a few weeks, he could not measure the degree of erosion resulting from the most recent rains and flooding, offered no

expert testimony from civil or mechanical engineers as to the extent and control of the erosion and failed to establish that erosion of his property has increased since the liner was constructed.

25. The cement liner has not redirected the water in Spring Branch Creek or caused it to flow in such a way as to increase the erosion of plaintiff's property. (PX 10–12, 15–21; .DX 2–8, 14–16)

26. Plaintiff has made no appraisals of his house since July 1978, and did not offer any expert testimony on the nature and value of his property before and after the construction of the liner. However, he testified, based on his own estimate of values of similar land in the area, that his property has decreased in value by $50,000 as a result of the construction of the liner and rain, that he has invested a total of $200,000 in improving his property and making it "attractive," and that it would cost him $2,000 a year to maintain and replace two feet of embankment which would be washed away each year over the next four or five years.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331. Venue is proper in the Court under 28 U.S.C. § 1391.

█ 2. The doctrine of abstention has no applicability in this case despite the fact that there is a similar action pending against Harris County Flood Control District in state court because state court construction of the state law will not obviate the need for a decision on the federal constitutional issues in the case. *See Hotel Coamo Springs Inc. v. Colon,* 426 F.Supp. 664, 667–68 (D.P.R.1976).

█ 3. Although courts in other circuits have held that there is no cause of action under 42 U.S.C. § 1983 where plaintiff alleges a "taking" of his property by the state without due process of law and does not first attempt to avail himself of adequate state procedures for compensation following the *de facto* appropriation, *see e.g. O'Grady v. City of Montpelier,* 573 F.2d 747, 751 (2d Cir.1978); *Elterich v. City of Sea Isle City,* 477 F.2d 289, 291 (3rd Cir. 1973); *Light v. Blackwell,* 472 F.Supp. 333, 336–39 (E.D.Ark.1979); *Kohlasch v. New York State Thru Way Authority,* 460 F.Supp. 956, 960–61 (S.D.N.Y.1978), *Kao v. Red Lion Municipal Authority,* 381 F.Supp. 1163, 1166 (M.D.Pa.1974), the Court of Appeals for the Fifth Circuit has not required first resort to state courts. It has stated in *Battle v. Mulholland,* 439 F.2d 321 (5th Cir. 1971) that a remedy in the federal courts is "supplementary to any remedy any state might provide." *See also Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). As noted in *Archer Gardens, Ltd. v. Brooklyn Center Development Corp.,* 468 F.Supp. 609, 613–614 (S.D.N.Y.1979) the Fourth, Sixth and Ninth Circuits have not disapproved federal jurisdiction over eminent domain cases. In the instant case, moreover, the state has not instituted eminent domain proceedings. *See Ballard Fish and Oyster Company, Inc. v. Glaser Construction Company,* 424 F.2d 473, 475 (1970). This Court concludes plaintiff can bring his cause of action in federal court despite his subsequently filed and pending action in state court.

█ 4. A taking under the Fifth and Fourteenth Amendments to the Constitution of the United States may be established without an actual physical appropriation. *See e.g. Allain-Lebreton Co. v. Dept. of Army,* 670 F.2d 43 at 45 (5th Cir.1982) (per curiam).

█ 5. By law the "beds and bottoms" of public creeks and streams in Texas are the property of the State. Tex. Parks and Wild. Code Ann. § 1.011(c) (Vernon 1976).

█ 6. The bed of a stream is generally measured as extending to "a point or line on the bank which is habitually washed during the year by the variation up and

down in ... flow caused by normal rains or ordinarily washed free of vegetation." *State v. Heard,* 199 S.W.2d 191, 197 (Tex. 1946).

7. Defendant did not prove that Spring Branch Creek is a navigable stream, within the meaning of Tex.Nat.Res.Code Ann. § 21.012.

8. The liner as originally designed would, if a right of way were not acquired, have resulted in a taking under the Fifth and Fourteenth Amendments to the Constitution of the United States of that portion of plaintiff's property which, lies above the line indicated as # 42 on PX 3.

9. Defendant Haile is not liable for a taking under the Fifth and Fourteenth Amendments based on the decisions not to acquire a right of way over plaintiff's land and to truncate the liner because it did not participate in either decision.

10. As constructed the liner did not result in a taking of plaintiff's property, in violation of the United States Constitution.

11. Defendant Smith is therefore not liable for taking of plaintiff's property.

12. Moreover, defendant Smith, sued in his individual and not his official capacity, is immune from personal liability for damages. His actions to improve the Spring Branch Creek by the construction of a cement liner including his decision not to acquire a right of way over plaintiff's property and to truncate the liner were taken in the good faith performance of his official duties and plaintiff has not shown that defendant "reasonably should have known that the action[s] he took, within the sphere of official responsibility, would violate [plaintiff's] constitutional rights" and he did not take "the actions with the malicious intention" to deprive plaintiff of constitutional rights or injure him, *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). *See Universal Amusement Company, Inc. v. Hofheinz,* 646 F.2d 996 *rehearing denied,* 655 F.2d 1131 (5th Cir.1981); *Familias Unidas v. Briscoe,* 619 F.2d 391, 403 (5th Cir.1980).

13. There is no question of the Eleventh Amendment immunity of HCFCD from suit under 42 U.S.C. § 1983 because HCFCD is not a defendant in the case.

14. The Court, declines to exercise pendent jurisdiction over plaintiff's state law claims.

15. Any finding of fact which should properly be deemed a conclusion of law is hereby adopted as such; any conclusion of law which should properly be deemed as finding of fact is hereby adopted as such.