69 N.J. Super. 136 (1961)
173 A.2d 785
JOINT MEETING OF THE CITY OF PLAINFIELD, BOROUGH OF NORTH PLAINFIELD, AND THE BOROUGH OF DUNELLEN, AND THE CITY OF PLAINFIELD, THE BOROUGH OF NORTH PLAINFIELD, AND THE BOROUGH OF DUNELLEN, PLAINTIFFS,
v.
BOROUGH OF MIDDLESEX, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided September 14, 1961.
Messrs. Stryker, Tams & Dill (Mr. Walter F. Waldau appearing), attorneys for plaintiffs.
Messrs. Rafferty & Blacher (Mr. John J. Rafferty appearing), attorneys for defendant.
MOLINEUX, J.C.C. (temporarily assigned).
This is an action in lieu of prerogative writs which seeks to set aside ordinance No. 323 of defendant Borough of Middlesex, by which its prior zoning ordinance was amended so as to create *137 a new zone within defendant municipality limiting the use of the lands in said new zone to parks, playgrounds and schools. Plaintiffs are the City of Plainfield, the Borough of North Plainfield and the Borough of Dunellen, acting in joint meeting in accordance with a contract entered into among themselves on or about November 3, 1913, pursuant to the legislative authority now found in R.S. 40:63-68.
About 1914 plaintiffs acquired title to about 91 acres located within the boundaries of defendant Borough of Middlesex, bounded on the north by Green Brook, on the west by Green Brook and by Bound Brook, on the south by Bound Brook Road, also known as State Highway No. 28, and on the east by various private properties and the dead ends of certain streets. Plaintiffs constructed on said property a sewage disposal plant for the three plaintiff municipalities. Defendant municipality had no interest in the operation of this plant and none of its sewage was treated therein.
In 1954 contracts were entered into between plaintiffs in joint meeting and the Middlesex County Sewerage Authority, under which the sewage being treated in the sewage plant aforesaid would instead be deposited into the trunk sewer then under construction by the County Sewerage Authority.
Sometime in 1958 the necessary connections were made between the sewage systems of the joint meeting and that of the Middlesex County Sewerage Authority. As a result, the sewage plant of plaintiffs was no longer necessary for plaintiffs' operation and was dismantled.
Facilities other than the treatment plant itself, consisting of a two-story office and laboratory building, garage, machine shop, a maintenance building and a residence for the superintendent, remain necessary for the continued operation of the joint meeting's sewage system as so connected with the Middlesex County Sewerage system.
In 1951 plaintiffs sold to the Board of Education of the Borough of Middlesex about 15.8 acres located on the southeast corner of its property, on which the board has erected a new high school. Notwithstanding said sale and the retention *138 of the facilities by the plaintiffs, there still remains a very substantial part of the land originally purchased by the plaintiff of no use to them and they have placed the same on the market for sale.
Defendant wishes to acquire the excess lands for park and playground purposes. The board of education showed sufficient interest in purchasing the property to place before the school electorate a proposal for raising funds for such purpose. The proposal was defeated.
After this defeat defendant municipality commenced negotiations for the purchase by it of the lands in question, and plaintiffs were offered $100,000 for the same. This offer was rejected. Further negotiations have not been successful, but it appears that plaintiffs intend to sell and defendant wishes to purchase.
On February 9, 1955 a zoning ordinance for the Borough of Middlesex was duly adopted, under the terms of which all the lands and premises of plaintiffs were zoned under the classification of R-100, the highest evaluation of residential property. The surrounding area was zoned and used for residential and commercial properties. No change in zoning affecting these lands was ever made until passage of ordinance No. 323, the ordinance here in question.
The stipulation of facts entered into herein and constituting part of the record on which this case is to be decided includes this interesting paragraph:
"9. In a meeting with representatives and attorney of the defendant the suggestion was made to a committee representing the plaintiffs that if no agreement was reached for the purchase of the land on the defendant's terms, the defendant would rezone the whole tract for parks and playgrounds."
On August 24, 1960 ordinance No. 323 was adopted in final form as an amendment to defendant's original ordinance. It creates a new zone limited as to use to parks, playgrounds and schools. The area encompassed in the new zone includes all of the lands owned by plaintiffs, the land now owned by *139 the Middlesex Borough Board of Education and sold to it by plaintiffs on which is located the new high school, and a relatively small plot of land in the northeast corner of the zoned area approximately 321' x 190', which latter land, according to the stipulation, "has been offered to Middlesex Borough for school purposes."
The net result of the amended ordinance is to continue plaintiffs' use of the land they intend to retain as a nonconforming, preexisting use, and to limit the use of the balance by plaintiffs or anyone to whom plaintiffs may sell to schools, not necessarily public, and to "public parks, playgrounds, athletic fields and similar public recreational purposes; the construction of buildings and structures which may be necessary or incidental to such uses of said land."
One month subsequent to the adoption of ordinance No. 323 the borough council of defendant municipality passed a resolution declaring that acquisition of all of the lands in this area (except that owned by the board of education and the aforementioned small parcel in the northeast corner) was necessary for public use for the purposes of public parks, playgrounds, athletic fields and similar public recreational purposes, and authorizing its attorney to commence condemnation proceedings with the view of obtaining title thereof in behalf of the borough. No further steps by way of eminent domain have been taken.
On October 10, 1960 plaintiffs filed their complaint herein asking that ordinance No. 323 be set aside and that defendant be directed to proceed with its eminent domain proceedings if it desires a portion of the plaintiffs' property, or, in the alternative, that defendant be restrained from publicly claiming or threatening to take the property in question or any portion thereof by eminent domain. At the time of the pretrial the complaint was amended to allege that the prior zoning of plaintiffs' property (R-100) was also illegal and void. However, the pretrial order limited the initial hearing to a consideration of the merits of ordinance No. 323, with the understanding that if the ordinance were set aside, *140 a further hearing would be held on the validity of the original zoning ordinance.
Plaintiffs claim that ordinance No. 323 is arbitrary and unreasonable and is an unconstitutional taking of private property without just compensation. Defendant, on the other hand, says that the ordinance is a lawful exercise of its power to zone, is entitled to all presumptions of validity, and further argues that the fact that it prevents use by plaintiffs of their property for its most advantageous monetary purpose does not result in invalidity.
Initially, it should be pointed out that no evidence has been submitted to the court as to the nature of the land in the proposed new zone and as to its suitability for any particular use. For the purposes of this decision it will therefore be assumed that in fact said lands could be used for parks, playgrounds, schools, or, on the other hand, for business or residential purposes. It follows therefore that the unreasonableness of ordinance No. 323, if it be unreasonable, cannot arise from the nature of the land in question.
An examination of the ordinance discloses the extreme limitation on the use of the lands:

"SECTION XII-A. Parks, Playgrounds and Schools.

USES PERMITTED
In the Parks, Playgrounds and Schools Zone, the following uses and no other shall be permitted, to wit:
1. The construction or extension of school buildings; the utilization of lands within said zone for all public parks, playgrounds, athletic fields and similar public recreational purposes; the construction of buildings and structures which may be necessary or incidental to such uses of said lands."
Thus, plaintiffs are limited by the ordinance to using the property for a school or for public parks and playgrounds. They are barred from developing the land for residential or business purposes. It naturally follows that plaintiffs' potential buyers are equally limited as to use. Plaintiffs, under the ordinance, in order to realize the economic value of the property, must therefore find some purchaser who will either build *141 a school or use the property for public parks or playgrounds. While it is conceivable that they could find a private school willing to build on the property, as a practical matter the effect of the zoning ordinance is to limit the purchaser to defendant borough or to the board of Education of the Borough of Middlesex. While the separate legal entities of the two are recognized, nevertheless, together they represent in fact a single buyer, that is, the people of the Borough of Middlesex. The net result of the ordinance is to destroy for all practical purposes the full value of plaintiffs' property and to leave plaintiffs at the mercy of defendant as to the price that the latter may be willing to pay. However desirable the property may be for defendant for parks and playgrounds, the defendant cannot use its power to zone as a method of depreciating the value of the property for the purposes of purchase.
In Hager v. Louisville & Jefferson County Planning & Zoning Commission, 261 S.W.2d 619 (Ky. Ct. App. 1953) (not officially reported), a landowner sought an injunction restraining the defendant commission from amending the master plan so as to designate certain lands owned by plaintiff as temporary storage basins in connection with a flood control project of the county. Plaintiff contended that defendant's actions resulted in a deprivation of his property without due process, in violation of the federal and state constitutions. Defendant argued that its action merely showed the exact location of these lands for the convenience of the public. The court reversed a dismissal of the complaint, saying (at page 620):
"* * * The commission may not under the guise of amending its master plan by resolution transfer rights in private property to the city and county which the latter may only acquire by purchase or by the exercise of the power of eminent domain. See Yara Engineering Corporation v. City of Newark, 132 N.J.L. 370, 40 A.2d 559. Not only is the commission attempting to zone in a manner that is wholly illegal but its action amounts to a taking of property without due process of law in violation of Section 1 of the Fourteenth Amendment of the Constitution of the United States and the result is also an appropriation of private property for *142 public use without just compensation in contravention of Sections 13 and 242 of the Constitution of Kentucky. It follows that the resolution is void."
In State ex rel. Tingley v. Gurda, 209 Wis. 63, 243 N.W. 317, 320 (Sup. Ct. 1932), the court said:
"The zoning power is one which may be used to the great benefit and advantage of a city, but, as this case indicates, it is a power which may be greatly abused if it is to be used as a means to depress the values of property which the city may upon some future occasion desire to take under the power of eminent domain. Such a use of the power is utterly unreasonable, and cannot be sanctioned. It is entirely beyond the purpose of the zoning law to condemn a block in the heart of an industrial section to residential purposes only, for which purposes it is largely valueless because of the reason that it is in the heart of an industrial area. We have little hesitation in pronouncing this ordinance, in so far as it places relator's property in a residential district, utterly unreasonable and void, for which reason the judgment of the lower court must be affirmed."
The above quotation was cited with approval by the Supreme Court of Michigan in Grand Trunk Western R. Co. v. City of Detroit, 326 Mich. 387, 40 N.W.2d 195 (1949), and again in Long v. City of Highland Park, 329 Mich. 146, 45 N.W.2d 10 (1950). It must be admitted that in the latter three cases the zoning limitation was as to a use not reasonable for the lands in question, whereas in the case at bar we have no evidence that the use of the lands for schools, parks or playgrounds is unreasonable insofar as the quality and nature of the property are concerned. What we do have, however, is a use limitation so restrictive that plaintiffs themselves cannot use the property and can sell it only to the very party imposing the restrictions. In effect, plaintiffs are deprived of their full property rights without full compensation.
What was said by Mr. Justice Holmes in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922), is apropos:
*143 "We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."
One New Jersey case approximates the situation before the court. In Yara Engineering Corp. v. City of Newark, 132 N.J.L. 370 (Sup. Ct. 1945), it appeared that the City of Newark attempted by zoning amendment to severely limit the use of property adjacent to the city airport. It was obvious that the purpose of the zoning amendment was to make more safe the operation of that facility. The zoning amendment was stricken, the court saying:
"* * * We conclude that this ordinance undertakes to zone without authority of any statute and is in fact the taking of private property without due process of law, in violation of the Fourteenth Amendment of the United States Constitution, and also the taking for public use without just compensation, in violation of article 1, paragraph 16 of the state constitution.
The city is within its rights in acquiring property for airport purposes under the provisions of R.S. 40:8-1, and it may acquire private property for such purposes by condemnation if necessary under R.S. 40:8-5. To restrict the height or building of any structures or trees, or to interfere electrically with communication or impair visibility by lights, etc., or in any way to use property within two miles of the airport to endanger the landing or taking off, etc., of aircraft, as provided in the questioned ordinance, is an interference with the rights of property ownership, which is not within the contemplation or purpose of the zoning law. The city may not under the guise of an ordinance acquire rights in private property which it may only acquire by purchase or by the exercise of its power of eminent domain. * * *"
In Grosso v. Board of Adjustment of Millburn Twp., 137 N.J.L. 630 (Sup. Ct. 1948), a variance was sought to allow the use of land zoned for single-family residences as an automobile showroom and garage. A hearing was scheduled but several continuances were granted. Finally, the application was denied without hearing for the reason that the municipality, after the application for a variance was filed, had by ordinance changed the official map of the township *144 by extending a street to place the entire property in question in the bed of the proposed street. It was held that the ordinance was invalid. The court said (at pp. 633-634):
"It was plainly not open to the defendant municipality, in the exercise of the planning power, to dedicate the locus to highway uses on the `official map' and thereby deprive the landowner of all use thereof, without making compensation, until the municipality was prepared to lay out the street. That would constitute a palpable deprivation of the property without due process of law. The amendment of the ordinance does not purport to be the exercise of the power of eminent domain. Rather it was deemed to be a valid regulation under the police power. The Board of Adjustment erroneously concluded that the ordinance served to deprive prosecutor of the use of his land. Such interference with the landowner's exclusive right to the possession, use and enjoyment of his property would infringe the cited constitutional guaranties. This would be a public use for which private property is subject to appropriation only under the power of eminent domain. Private property may not be confiscated under the guise of police regulations."
For similar holdings, see Roer Construction Corp. v. City of New Rochelle, 207 Misc. 46, 136 N.Y.S.2d 414 (Sup. Ct. 1954); Vernon Park Realty v. City of Mount Vernon, 307 N.Y. 493, 121 N.E.2d 517 (Ct. App. 1954); Miller v. City of Beaver Falls, 368 Pa. 189, 82 A.2d 34 (Sup. Ct. 1951); and State ex rel. Sun Oil Co. v. City of Euclid, 164 Ohio St. 265, 130 N.E.2d 336 (Sup. Ct. 1955).
It is the opinion of the court that the exercise by defendant municipality of its power to zone has here been used to unconstitutionally deprive plaintiffs of the full value of their property, notwithstanding that the desire of the municipality to acquire the lands and premises for parks, playgrounds and schools is otherwise in all respects legitimate.
Defendant has cited cases in which a zoning ordinance does not contravene constitutional limitations merely because the restrictive use is not the most profitable one to the owner. Rexton v. Board of Adjustment, 10 N.J. 1 (1952), and Berdan v. City of Paterson, 1 N.J. 199 (1948). This is undoubtedly true. On the other hand, it has been held that *145 if a zoning ordinance leaves property useless to the owner, it is confiscatory and therefore unconstitutional. Bogert v. Washington Township, 25 N.J. 57 (1957); and Rozesnik v. Montgomery Township, 24 N.J. 154 (1957). We think that ordinance No. 323 as applied in the present situation comes within the orbit of the latter holding and that its enactment is beyond the power of the defendant municipality.
An order may be presented in accordance with the opinion herein expressed.