**Martsey RIPPLEY, Douglas Rippley, Billy Rippley and Debra Rippley Kuntz, Plaintiffs, Appellants and Cross Appellees,**

v.

**The CITY OF LINCOLN, Don Carley, Westley Woehl, Peter Hoerner, Don Lervik and Bob Brockman, Defendants, Appellees and Cross Appellants.**

**Civ. No. 10181.**

Supreme Court of North Dakota.

Feb. 16, 1983.

Zuger & Bucklin, Bismarck, for plaintiffs, appellants and cross appellees; argued by John A. Zuger and Robert V. Bolinske, Bismarck.

Fintan L. Dooley, Bismarck, for defendants, appellees and cross appellants; argued by Fintan L. Dooley, Bismarck.

ERICKSTAD, Chief Justice.

This is an appeal by the plaintiffs (the Rippleys) from a judgment of the District Court of Burleigh County, dated January 12, 1982, dismissing on its merits the Rippleys' inverse condemnation action against the defendants (Lincoln). Lincoln has filed a cross-appeal from the district court's denial of its request for attorney's fees. We reverse and remand for further proceedings consistent with this opinion.

The Rippleys currently own approximately 20 acres of land within the City of Lincoln. Prior to the establishment of the City of Lincoln, the Rippleys' land was zoned residential by the City of Bismarck under its extraterritorial zoning authority. On March 20, 1979, subsequent to the establishment of the City of Lincoln, the city council passed a comprehensive zoning ordinance which, relevant to this case, zoned the Rippleys' 20 acres of land for "public use." Lincoln did not commence eminent domain proceedings to acquire the Rippleys' property nor did it otherwise offer to compensate the Rippleys for their land. It is undisputed, however, that the city intended to use the land in the future for construction of a school and other governmental operations such as a fire station and a city hall. The Rippleys requested Lincoln to rezone the land from "public use" to "commercial" zoning, but the request was denied. Thereafter, the Rippleys brought an inverse condemnation action in district court asserting that the City of Lincoln, through its zoning ordinance, has deprived them of all reasonable use of their property in violation of their state and federal constitutional rights to just compensation for property taken for public use. The district court, concluding that Lincoln's actions did not constitute a taking for which the Rippleys were entitled to compensation, entered a judgment dismissing the action from which the Rippleys have now appealed to this Court.

On appeal, the Rippleys assert that Lincoln's zoning ordinance has deprived them of all reasonable use of their property resulting in a "taking" of their land for which they are entitled to just compensation under Article I, Section 16 of the North Dakota Constitution, which provides that "private property shall not be taken or damaged for public use without just compensation ..." and also under the Fifth Amendment of the United States Constitution

which guarantees that private property shall not "be taken for public use without just compensation." [1]

The question of whether or not there has been a taking of private property for public use is a question of law which is fully reviewable by this Court on appeal. *Kraft v. Malone,* 313 N.W.2d 758, 761 (N.D.1981).

The state, acting through its police power, has broad authority to enact land use regulations without compensating landowners for restrictions placed upon their property, and a zoning ordinance, one type of land use regulation, does not constitute a taking for which compensation must be paid merely because it diminishes the value of the regulated property or disallows the best and highest use of the property. *Eck v. City of Bismarck,* 283 N.W.2d 193 (N.D.1979); *Newman Signs, Inc. v. Hjelle,* 268 N.W.2d 741 (N.D.1978). However, governmental regulation which prohibits all or substantially all reasonable use of the regulated property constitutes a taking of the property for public use which entitles the landowner to just compensation through an inverse condemnation action. *See, Kraft v. Malone,* 313 N.W.2d 758 (N.D.1981).

Lincoln's zoning ordinance places the Rippleys' property in a "P Public Use" zone [2] under which the property is dedicated solely to governmental uses. The ordinance specifically prohibits any "residential, commercial and industrial uses of the land." The "P Public Use" zoning of the Rippleys' property is a classic example of the type of land use regulation which other jurisdictions have found to constitute a taking of private property for public use without just compensation. *See, Bartlett v. Zoning Commission,* 161 Conn. 24, 282 A.2d 907 (1971); *Dooley v. Town Plan and Zoning Commission,* 151 Conn. 304, 197 A.2d 770 (1964); *Morris County Land Improvement Company v. Township of Parsippany-Troy Hills,* 40 N.J. 539, 193 A.2d 232 (1963); *City of Plainfield v. Borough of Middlesex,* 69 N.J.Super. 136, 173 A.2d 785 (1961).

In *Borough of Middlesex, supra,* the defendant municipality adopted a zoning ordinance, similar to the one in the instant case, which limited the use of the plaintiffs' property to the following:

" ' . . . The construction or extension of school buildings; the utilization of lands within said zone for all public parks, playgrounds, athletic fields and similar public recreational purposes; the construction of buildings and structures which may be necessary or incidental to such uses of said lands.' " 173 A.2d at 787.

In concluding that the ordinance constituted an unconstitutional taking of the plaintiffs' property, the court stated:

ularly commercial recreation uses of the land, and to prohibit any use of the land which would diminish its value in serving the needs of the city.

2. Uses permitted—The following uses are permitted:

  a) Education group

  b) Public recreation group

  c) Utility service group

  d) Buildings and necessary on-site facilities required for conduct of government

  e) Sewerage treatment plant

      \*   \*   \*   \*   \*   \*

8. Character of district—It is the intent of this article and section to designate as a P public use district only areas that are at the date of adoption of this article or become later devoted to the general conduct of government, public recreation, public education, including parochial educational institutions, necessary public services and cemeteries. . . . "

---

1. The Just Compensation Clause of the Fifth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980).

2. The ordinance describes the "P Public Use" zone in relevant part as follows:

"In any P public use district the following regulations shall apply:

1. General description—The P public use district is established as a district in which the predominant use of land is for public uses. For the P public use district, in promoting the general purposes of this article, the specific intent of this section is:

  a) To encourage the continued use of the land for public recreation, education and other necessary government services and buildings.

  b) To prohibit residential, commercial and industrial uses of the land, to prohibit partic-

"Plaintiffs, *under the ordinance,* in order to realize the economic value of the property, must therefore find some purchaser who will either build a school or use the property for public parks or playgrounds. While it is conceivable that they could find a private school willing to build on the property, as a practical matter the effect of the zoning ordinance is to limit the purchaser to defendant borough or to the Board of Education of the Borough of Middlesex.... The net result of the ordinance is to destroy for all practical purposes the full value of plaintiffs' property and to leave plaintiffs at the mercy of defendant as to the price that the latter may be willing to pay.

\* \* \* \* \* \*

"... in the case at bar we have no evidence that the use of the lands for schools, parks or playgrounds is unreasonable insofar as the quality and nature of the property are concerned. What we do have, however, is a use limitation so restrictive that plaintiffs themselves cannot use the property and can sell it only to the very party imposing the restrictions. In effect, plaintiffs are deprived of their full property rights without full compensation." 173 A.2d at 787–788.

Lincoln's zoning ordinance, like the ordinance in *Borough of Middlesex, supra,* destroys all reasonable use [3] of the Rippleys' property leaving the Rippleys at the mercy of Lincoln as to a future date, if ever, that the latter may be willing to purchase the property for construction of public facilities.

*Parsippany-Troy Hills, supra,* involved a township zoning ordinance which permitted the following uses of a 1500 acre swamp area:

"... agricultural uses; raising of woody or herbaceous plants; commercial green houses; raising of aquatic plants, fish and fish food (with a one-family dwelling as an adjunct to any of these uses, provided

its lowest floor was a specified distance above flood level); out-door recreational uses operated by a governmental division or agency; conservation uses 'including drainage control, forestry, wildlife sanctuaries and facilities for making same available and useful to the public'; hunting and fishing preserves; public utility transmission lines and substations; radio or television transmitting stations and antenna towers; and township sewage treatment plants and water supply facilities." 193 A.2d at 236.

The New Jersey Supreme Court determined that the prime objective of the ordinance was to retain the land substantially in its natural state for the public benefit and that the practical effect of the ordinance was to preclude any reasonable private use of the property which would allow the landowners a reasonable means of obtaining a return from the property. In holding that the ordinance constituted an unconstitutional taking of property without just compensation, the court stated:

"The measures here adopted to accomplish public benefits do not amount to a direct or outright taking, ....

\* \* \* \* \* \*

"But a taking may as well occur indirectly through excessive regulation under the police power.

\* \* \* \* \* \*

"While the issue of regulation as against taking is always a matter of degree, there can be no question but that the line has been crossed where the purpose and practical effect of the regulation is to appropriate private property for a flood water detention basin or open space. These are laudable public purposes and we do not doubt the high-mindedness of their motivation. But such factors cannot cure basic unconstitutionality." 193 A.2d at 241.

In this case, as in *Parsippany-Troy Hills, supra,* the zoning ordinance has the purpose

---

**3.** It is conceded by the Rippleys that, pursuant to a nonconforming use provision under the ordinance, the Rippleys may continue to sell hay from the undeveloped land. During 1981, the sale of hay yielded a return of approximately $150.00. We deem this to constitute a *de minimis* use and not a reasonable use of the property.

and practical effect of appropriating private property for public uses without giving the landowners the constitutionally required compensation.

The zoning ordinance in *Bartlett, supra,* restricted the use of the plaintiff's property, which was considered a title marshland, to construction of wooden walkways, wharves, duck blinds, a public boat landing, public ditches, a channel, a boathouse sufficient to accommodate only the landowner's boat, piers, docks, piles for life lines, rafts, or jetties. The court concluded that under the ordinance the plaintiff's use of his property was practically nonexistent, and that the ordinance thereby constituted a taking of the plaintiff's property without just compensation.

The municipal zoning ordinance in *Dooley v. Town Plan & Zoning Commission,* 151 Conn. 304, 197 A.2d 770 (1964), allowed only the following uses:

" '1. Parks, playgrounds, marinas, boat houses, landings and docks, clubhouses and necessary uses.

" '2. Wildlife sanctuaries operated by governmental units or non-profit organizations.

" '3. Farming, truck and nursery gardening.

" '4. Motor vehicle parking as an accessory to a permitted use in this district or an adjacent district.' " 197 A.2d at 771.

The Connecticut Supreme Court of Errors concluded:

"There can be no doubt that, from the standpoint of private ownership, the change of zone to flood plain district froze the area into a practically unusable state. The uses which are presently permitted in the new zone place such limitations on the area that the enforcement of the regulation amounts, in effect, to a practical confiscation of the land." 197 A.2d at 773.

■  Similar to the zoning regulations in the foregoing cases, Lincoln's zoning ordinance restricts the use of the Rippleys' property to "government services" and deprives the owners of all reasonable use of the property. It would be difficult to envision a land use regulation which more clearly attempts to appropriate private property for public use without compensation. Accordingly, we hold that by zoning the Rippleys' property "P Public Use" Lincoln has deprived the Rippleys of all reasonable use of their property and has thereby accomplished a taking of the property for which just compensation is constitutionally required.

The Rippleys assert that, as a remedy, they are entitled to receive from Lincoln the full fair market value of the property "taken" by the zoning ordinance. Relative to this issue Justice VandeWalle, writing for this Court in *Eck v. City of Bismarck,* 283 N.W.2d 193 (N.D.1979), said:

"We agree that the potential consequences of an action for inverse condemnation militate against its availability to challenge the constitutionality of governmental regulation. If actions for inverse condemnation loom in the future, land-use planning might be stymied, the fiscal-budgetary process chaotic, and the financial burdens on the community staggering. Most important, authorization of such an action would enable North Dakota courts to sit as legislative bodies doling out the State and local fisc.

"We do not suggest, however, as did the California Supreme Court, that inverse condemnation is never an appropriate action through which to attack an unconstitutional zoning ordinance that forbids substantially *all* use of regulated property. When, through a regulation, a governmental entity displaces 'private ownership, occupation or management' of a property interest, inverse condemnation might be appropriate." 283 N.W.2d at 200–201.

In the subsequent case of *Kraft v. Malone,* 313 N.W.2d 758 (N.D.1981), a municipality refused to issue a building permit for construction of a residential home on property located within a zone under which construction of residential homes was a permissible use. This Court determined that the municipality would not permit construction of

any building on the property because such construction would inhibit natural drainage and that the municipality's position effectively deprived the landowners of any reasonable use of the property. Our Court, concluding that the municipality had appropriated the landowner's property for public use as a drainage ditch, held that the landowner was entitled to receive the value of the lot from the municipality through an action in inverse condemnation.

Consistent with the foregoing decisions of this Court we believe that Justice Brennan, in the recent case of *San Diego Gas and Electric Company v. City of San Diego,* 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981), advances a practical approach for determining the measure of damages in a case such as this one where, through land use regulation, a municipality has deprived a landowner of substantially all reasonable use of his property.

A five justice majority of the U.S. Supreme Court in *San Diego, supra,* refused to render a decision on the merits of the case on the jurisdictional ground that a final state court decision had not been rendered. However, Justice Brennan, writing for a four justice minority, concluded that the Court did have jurisdiction and then proceeded to articulate a method for determining damages in regulatory taking cases which we believe is well-reasoned and which we choose to follow in this case:

"Having determined that property may be 'taken for public use' by police power regulation within the meaning of the Just Compensation Clause of the Fifth Amendment, the question remains whether a government entity may constitutionally deny payment of just compensation to the property owner and limit his remedy to mere invalidation of the regulation instead. Appellant argues that it is entitled to the full fair market value of the property. Appellee argues that invalidation of the regulation is sufficient without payment of monetary compensation. In my view, once a court establishes that there was a regulatory 'taking,' the Constitution demands that the government entity pay just compensation for the peri-od commencing on the date the regulation first effected the 'taking,' and ending on the date the government entity chooses to rescind or otherwise amend the regulation. This interpretation, I believe, is supported by the express words and purpose of the Just Compensation Clause, as well as by cases of this Court construing it.

\*    \*    \*    \*    \*    \*

"The fact that a regulatory 'taking' may may be temporary, by virtue of the government's power to rescind or amend the regulation, does not make it any less of a constitutional 'taking.' Nothing in the Just Compensation Clause suggests that 'takings' must be permanent and irrevocable. Nor does the temporary reversible quality of a regulatory 'taking' render compensation for the time of the 'taking' any less obligatory." [Footnotes omitted.] 101 S.Ct. at 1304–1306.

Justice Brennan then continues by explaining why a landowner in such a case cannot force a permanent taking of his property upon the governmental entity by requiring it to pay the landowner full fair market value for the property:

"But contrary to appellant's claim that San Diego must formally condemn its property and pay full fair market value, nothing in the Just Compensation Clause empowers a court to order a government entity to condemn the property and pay its full fair market value, where the 'taking' already effected is temporary and reversible and the government wants to halt the 'taking.' Just as the government may cancel condemnation proceedings before passage of title, see P. Nichols, 6 Eminent Domain § 24.113, at 24–21 (3d rev. ed. 1980), or abandon property it has temporarily occupied or invaded, see *United States v. Dow,* 357 U.S. 17, 26, 78 S.Ct. 1039, 1046, 2 L.Ed.2d 1109 (1958), it must have the same power to rescind a regulatory 'taking.' As the Court has noted, 'an abandonment does not prejudice the property owner. It merely results in an alteration of the property in-

terest taken—from full ownership to one of temporary use and occupation. ... In such cases compensation would be measured by the principles normally governing the taking of a right to use property temporarily.'" 101 S.Ct. at 1307. Finally, Justice Brennan advises the lower courts as to the method of arriving at the just compensation to which the landowner is entitled:

"Ordinary principles determining the proper measure of just compensation, regularly applied in cases of permanent and temporary 'takings' involving formal condemnation proceedings, occupations, and physical invasions, should provide guidance to the courts in the award of compensation for a regulatory 'taking.' ... The government must inform the court of its intentions vis-a-vis the regulation with sufficient clarity to guarantee a correct assessment of the just compensation award. Should the government decide immediately to revoke or otherwise amend the regulation, it would be liable for payment of compensation only for the interim during which the regulation effected a 'taking.' ... Alternatively the government may choose formally to condemn the property, or otherwise to continue the offending regulation: in either case the action must be sustained by proper measures of just compensation." 101 S.Ct. at 1307–1308.

■ We believe the foregoing remedy advanced by Justice Brennan for cases involving a regulatory taking constitutes not only a legally correct analysis of the "taking" involved but also provides a practical and fair solution for all parties. If a landowner proves that governmental regulation has deprived him of all reasonable use of his property, he is entitled to receive just compensation. However, the landowner cannot force a permanent taking upon the governmental body if the taking is reversible and the government wants to halt the taking. Rather, under its police power authority, the governmental body can choose to rescind the ordinance or other regulation in which case it must compensate the landowner only for a temporary taking measured by the time period between the date the regulation took effect and the date it was rescinded. If, however, the governmental body chooses to retain the ordinance or other regulation the landowner is then entitled to compensation for a permanent taking of his property. Upon remand of this case for a determination of the damage issue, the City of Lincoln must inform the court of its intention to either rescind or to continue the "P Public Use" zoning upon the Rippley property. With that information, the court can hold further hearings to determine the appropriate measure of damages in accordance with the approach advanced by Justice Brennan in *San Diego, supra,* which we adopt in this case.[4]

Lincoln filed a notice of appeal from "the Trial Judge's denial of attorney fees for matters related to defense of individual defendants." Relative to this issue, the district court entered the following findings of fact:

the city had no obligation to rezone to commercial use this land, which prior to March, 1979, had been zoned for residential use. Although it has been determined that the public use zoning prohibited all reasonable use of the property by the Rippleys, the record does not demonstrate that commercial zoning was the only classification under which a reasonable use of the property could be made. Consequently, the earnest money contract to which the Rippleys refer was contingent upon a rezoning to which the Rippleys had no absolute right and of which the city had no obligation to provide. Thus, the failure of the Rippleys to complete a sale under that contract does not constitute a basis upon which to measure damages in this case.

---

4. Relative to the issue of damages, the Rippleys allege that they lost a potential sale of approximately 17 acres of their land because it was zoned "P Public Use" by Lincoln. They assert that they executed an earnest money contract to sell 17 acres of the property for $175,000.00 "contingent only on the land being rezoned to commercial." The Rippleys assert that because the city refused to rezone the land to commercial use, they were unable to sell the land under the contract, and therefore the price offered for the property under the contract constitutes a basis upon which to determine the amount of just compensation to which they are entitled. We disagree. The Rippleys concede that the contract was contingent upon the land being rezoned to commercial use. However,

"II.

"That after parties rested and after defendants moved for dismissal of the claim against individual defendants named hereabove together with imposition of costs and attorney fees, yet before the court ruled on said motion the plaintiff's attorney moved for dismissal of claims against individual council members and to dismiss all of the allegations of the complaint except for the issue of inverse condemnation and damages therefore.

"III.

"That the Court found dismissal appropriate but denied attorney fees and costs."

On appeal, Lincoln asserts that the district court should have awarded attorney's fees for the defense of the Rippleys' action against the individual city councilmen which, Lincoln asserts, was a frivolous action. Lincoln bases its request for attorney's fees on Section 28–26–31, N.D.C.C., and on Rule 38 of the North Dakota Rules of Appellate Procedure:

"*28–26–31. Pleadings not made in good faith.*—Allegations and denials in any pleadings in court, made without reasonable cause and not in good faith, and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial." § 28–26–31, N.D.C.C.

"If the court determines that an appeal is frivolous, or that any party has been dilatory in prosecuting the appeal, it may award just damages and single or double costs including reasonable attorney's fees." Rule 38, N.D.R.App.P.

In their complaint, the Rippleys asserted that the individual defendants, all of whom were councilmen of the City of Lincoln, acted in an arbitrary, capricious, wanton, and willful disregard of the Rippleys' rights by depriving the Rippleys of all reasonable use of their property, and the Rippleys requested punitive damages against the defendants for those actions. During the trial, the Rippleys introduced evidence to prove that the city councilmen refused to zone the Rippleys' land with any designation other than "P Public Use" in order to keep the value of the property as low as possible to benefit the city if it decided to purchase the property in the future.

Section 32–12.1–04, N.D.C.C., which relates to the personal liability of employees of political subdivisions, indicates that it is proper to name individual political subdivision employees as defendants in an action for an alleged act or omission occurring within the employee's scope of employment. Although the section has been amended, effective July 1, 1981, it read, in relevant part, as follows at the time the Rippleys' action was filed in December, 1979:

"1. The governing body of any political subdivision shall defend any claim against an employee thereof where the political subdivision could otherwise be held liable pursuant to subsection 1 of section 32–12.1–03. *A claim against an employee shall be brought in the same manner as a claim against a political subdivision* and shall be subject to the same limitations. *In any action against an employee of a political subdivision for an alleged act or omission occurring within the scope of the employee's employment or office, the political subdivision shall be joined as a party to the action,* and if there is any question concerning whether the alleged act or omission occurred within the scope of employment or office of the employee, the issue may be tried separately.

"2. An employee may be personally liable for money damages for injuries when the injures are proximately caused by the negligence, wrongful act, or omission of the employee acting outside the scope of the employee's employment or office. Employees and political subdivisions may be jointly or severally liable for puni-

tive or exemplary damages. The extent to which an employee may be personally liable pursuant to this section and whether the employee was acting within the scope of employment or office shall be specifically stated in a final judgment." [Emphasis added.] § 32–12.1–04, N.D.C.C.

■ Having reviewed the foregoing provisions together with the record in this case, we conclude that the district court did not err in denying Lincoln's claim for attorney's fees in defending the individual councilmen against the Rippleys' action.

We further conclude that Lincoln has failed to demonstrate a basis under Rule 38, N.D.R.App.P., for an award of attorney's fees on the ground that the Rippleys' appeal to this Court is frivolous.

The judgment of the district court is reversed and remanded for further proceedings to determine the amount of "just compensation" to which the Rippleys are entitled for the regulatory taking of their property, in accordance with this opinion.

VANDE WALLE, PEDERSON and SAND, JJ., and ALLAN L. SCHMALENBERGER, District Judge, concur.

SCHMALENBERGER, D.J., sitting in place of PAULSON, J., disqualified.

PEDERSON, Justice, concurring specially.

Although I concur with all that Chief Justice Erickstad has written, the occasion may arise in which the determination of whether or not the city has exceeded the bounds of police power in adopting a zoning ordinance will have a different posture. No property owners were involved in the suit in *City of Fargo v. Fahrlander*, 199 N.W.2d 30, 34 (N.D.1972), but this court said:

"... abutting owners are entitled to have the city initiate eminent domain proceedings to ascertain the damages caused...."

An action by a landowner to compel proceedings in eminent domain when there has been a taking or damaging, will require an initial determination by the court that a taking or damaging within the scope of the Constitution has occurred. See generally 30 C.J.S. Eminent Domain § 398. The uncertainty in a specific case, whether or not an act of zoning constitutes a taking or damaging could very well deprive a property owner of a writ in the absence of an authorizing statute.