United States Court of Appeals,

Eleventh Circuit.

No. 95-4142.

NEW PORT LARGO, INC., a Florida Corporation, Plaintiff-Appellant,

Charles H. Netter, et al., Plaintiffs,

v.

MONROE COUNTY, a political subdivision of the State of Florida, et al., Defendants-Appellees.

Sept. 25, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 87-10043-CIV-JLK), James Lawrence King, Judge.

Before EDMONDSON, Circuit Judge, and FAY and GIBSON[*], Senior Circuit Judges.

EDMONDSON, Circuit Judge:

New Port Largo, Inc. (NPL) appeals the district judge's rejection, after a bench trial, of the claims that Monroe County violated NPL's rights under the takings clause and the "substantive" component of the Fourteenth Amendment's due process clause. This case was before us on appeal previously.[1] Today, we affirm the district court's rejection of NPL's substantive claims.

I. Background

The facts of this case have been set out in earlier

---

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]In *New Port Largo, Inc. v. Monroe County,* 985 F.2d 1488 (11th Cir.1993) ("*NPL I* "), we determined that NPL's regulatory takings claims were not barred by the applicable statute of limitations.

proceedings and will not be repeated here at length.[2] Instead, we present the following background relevant to our disposition of this case.

NPL contends that the rezoning of its beachfront property, a "breakwater" in Monroe County (the "property"), requires compensation from the County. NPL purchased the property from a private trust in 1979, before the contested PA rezoning. The private trust had acquired the property after the land was dredged from beneath the water for the purpose of creating a landing strip that would also shelter some previously existing beachfront lots from harsh weather. The rezoning from RU-2 (residential duplex use) to PA (private airport use) in 1980, shortly after NPL's purchase.

After the property was rezoned to PA, NPL brought suit in Florida state court in 1986, alleging that the procedures by which the property was rezoned were invalid according to the County's Major Development Project Ordinance. NPL also contended that the rezoning was a taking and violated due process. NPL prevailed in the effort to invalidate the zoning (as NPL had prevailed in 1984 in a suit by the County contesting the ownership of the property). Here, NPL asserts that, while the title suit was pending, the property was illegally occupied by one LaLonde, the operator of a private airport. NPL contends that LaLonde held over beyond the end of his lease on the advice of the County, during which time he paid to the County, and the County accepted, continued payments for

---

[2]For a fuller explanation of the facts, see *NPL I* and the opinion of the district court on remand, set out at 873 F.Supp. 633 (S.D.Fla.1994).

the use of the property.  NPL now seeks to recover the value of the land during the time the regulation limiting its use was in effect.

NPL sued a number of defendants on a number of theories.  Now, the only remaining defendant is Monroe County, against whom NPL asserts claims for a temporary taking of property in violation of the Fifth Amendment and a deprivation of due process in violation of 42 U.S.C. § 1983.  After a bench trial, the district court granted judgment in full to the County.

## II. The Takings Issues

Plaintiff argues several substantive theories in support of its claim that its property has been taken without compensation in violation of the Fifth Amendment.  NPL contends that Monroe County (1) effectively deprived NPL of the right to exclude others;  (2) physically occupied NPL's property;  (3) deprived NPL of all economically viable uses of its property;  and (4) induced NPL to rely in good faith on the existing zoning.  We reject each of these contentions in turn.[3]

*A. Deprivation of the Right to Exclude*

NPL argues that the County's action constitutes a deprivation of the right to exclude.  *See generally Kaiser Aetna v. United States,* 444 U.S. 164, 179-80, 100 S.Ct. 383, 393, 62 L.Ed.2d 332 (1979) ("[W]e hold that the "right to exclude,' so universally held

---

[3]We first note that this case, as we determined in the previous appeal, is ripe.  *See NPL I,* 985 F.2d at 1494 ("At that time [January 2, 1986], both events required by *Williamson* to establish accrual of the takings claim had occurred.")  (citing *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (subject matter jurisdiction over takings cases requires satisfaction of "final decision" test and "just compensation" test)).

to be a fundamental element of the property right, falls within this category of interests that the government cannot take without compensation....").  NPL's argument here is that by rezoning to airport use, thus precluding all use of the property but as a private airport, the County effectively "circumvent[ed] eminent domain through its zoning power."  The County, according to NPL, zoned private property so it could only be used for the public good;  in essence, the property would function as publicly owned property.

The County's act of rezoning the property to private airport was not, in itself, a deprivation of the right to exclude.  NPL nowhere contends that, as a matter of law, the rezoning to private airport required it to admit the public.  Because the property could have remained dormant, consistent with the PA zoning, NPL cannot argue that the rezoning was a deprivation of the right to exclude in the traditional sense.

Thus, NPL presses a more creative argument.  In support of its theory that it was basically forced to invite the public onto its land, NPL relies on *Rippley v. City of Lincoln,*  330 N.W.2d 505 (N.D.1983), which found a taking where residential property was rezoned for "public use."  The North Dakota court reasoned that the rezoning had "the purpose and practical effect of appropriating private property for public uses without giving the landowners the constitutionally required compensation."  *Id.* at 508-09.

The *Rippley* case is unpersuasive as authority for this particular plaintiff for a number of reasons, but suffice it to say that the *Rippley* rezoning allowed only public uses (such as school,

park, sewage treatment plant, and so on).  There, the property would have yielded no revenue unless the City of Lincoln decided to purchase it.  *Id.* at 508.  Otherwise, the *Rippley* plaintiffs could use their property only by allowing the public access free of charge:  all residential and commercial uses were prohibited. *Id.* Here, regardless of Plaintiff's chances of ever turning a profit, see below Part II.B, Plaintiff remained free to transact some business, for profit, with the public at large.  Thus, we reject the argument that the rezoning was a de facto condemnation.  The reasoning of *Rippley,* even were we to conclude it is persuasive, does not require compensation here.

Plaintiff's analogies to *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), and *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), are also inapposite.  In these cases, a state had demanded that a person open his or her property to public traffic, again without compensation.  That fact distinguishes NPL's situation: the regulation in this case told NPL how it could use the property *for profit,* but did nothing to require NPL to open its property to the public for use just as the public wished.

*B. The Physical Occupation*

NPL alleges that the County "commandeered" the property by "conspiring" with LaLonde, the airport tenant, to ensure his continued occupation of the property beyond the expiration of his lease, and by accepting rents from LaLonde, thereby exercising dominion over property which was actually NPL's.  We conclude that NPL is, at this time, due no compensation on this "physical

occupation" theory.

By now it is beyond question that a permanent physical occupation of private property by the state constitutes a taking for which a landowner must be compensated. *See Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992) (takings clause requires compensation for "regulations that compel the property owner to suffer a physical "invasion' of his property"); *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 434, 102 S.Ct. 3164, 3175, 73 L.Ed.2d 868 (1982) ("[W]hen the character of the governmental action is a permanent physical occupation of property, our cases uniformly have found a taking to the extent of the occupation....") (citations and internal quotation marks omitted). We point out, however, that NPL's property has not been physically occupied in the traditional sense. *Loretto* is an inapt analogy: the landowner there could not exclude the cables from his property, at any cost; here, the airport zoning allowed NPL, if it chose, to let the property sit completely empty. The County did not directly physically occupy anything. *Cf. id.* at 436, 102 S.Ct. at 3176 ("[S]uch [a physical] occupation is qualitatively more severe than a regulation of the *use* of property....").

And, we decline now to address NPL's variation on this theory: that the County effected a physical occupation by "conspiring" with LaLonde to ensure LaLonde's continued presence on NPL's land and receiving rents on that land.[4] Assuming that the

---

[4]We note that the County operates—as an institution of government—through its legislative enactments, such as zoning. The act of "conspiring" with the private occupant of NPL's land

takings clause would mandate compensation for rents unlawfully received by a governmental entity for land not belonging to it, NPL has failed to show that a claim of this nature is now ripe. Specifically, nothing has been called to our attention in the record to show that NPL, by state law procedures, tried and failed to get "just compensation" for this rent-taking activity—which we see as involving a different theory from that underlying the regulatory "taking" accomplished by the zoning ordinance. *See generally Williamson,* 473 U.S. at 195, 105 S.Ct. at 3121 ("[A] property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation...."). With no indication that Florida property law or tort law deny recourse to one whose property is unlawfully leased by someone, including a government subdivision, to a third party, we cannot consider whether the Fifth Amendment would allow some compensation for that act.

*C. Deprivation of All Economically Viable Uses*

In addition to physical invasions of property, the Supreme Court has also accorded "categorical treatment," invariably requiring compensation, to cases "where regulation denies all economically beneficial or productive use of land." *Lucas,* 505 U.S. at 1015, 112 S.Ct. at 2893. Here, the district court found

is not the kind of uniquely governmental act that underlies a takings claim, ordinarily at least. Therefore, we question whether acts of "conspiracy" by individual members of a zoning board are governmental acts, for takings purposes; we also doubt that the Fifth Amendment requires compensation for these acts. But, because of the ripeness concern set out in the text, we pass over these issues.

that under the new zoning ordinance, NPL could still use its property in several economically viable ways:  as a private airport, and also for the construction of boat slips, a beach club, or dry storage space for boats.  This finding was essentially the result of the trial judge's decision to credit the testimony of Defendant's expert about the property's lawful and profitable uses.

We review the facts for clear error.  *See Lucas,* 505 U.S. at 1020 & n. 9, 112 S.Ct. at 2896 & n. 9 (describing district court's determination that no economically viable use remained as conclusion of fact).  Here, we conclude from our review of the record that the district judge's findings were not clearly erroneous.  Therefore, no compensation is due on the ground that the rezoning left NPL with no economically viable uses of its property.

NPL contends, however, that a factual finding by the judge in the state court action to invalidate the rezoning should have precluded relitigation of the economically viable uses issue in the federal district court.[5]  "It is now well established that ... a federal court must give the same full faith and credit to the records and judicial proceedings of any state court that they would receive in the state from which they arise." *Gjellum v. City of Birmingham,* 829 F.2d 1056, 1060 (11th Cir.1987) (citing 28 U.S.C. § 1738).  The preclusive effect of state judgments in federal court is determined, in the first instance, according to principles of

---

[5]The state court said that the "The only permitted use in said zoning district is a private airport....  This rezoning of this property, now determined to be private, to airport, would deprive the owner of any reasonable use."

state law. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985) ("This statute [28 U.S.C. § 1738] directs a federal court to refer to the preclusion law of the State in which judgment was rendered."). In Florida, "collateral estoppel applies when the identical parties wish to relitigate issues that were actually litigated as necessary and material issues in a prior action." *Carson v. Gibson,* 638 So.2d 79, 81 (Fla.Dist.Ct.App.1994) (citing *Albrecht v. State,* 444 So.2d 8 (Fla.1984)).

Here, NPL has failed (at the least) to satisfy the "necessary and material" element of the issue preclusion analysis. The state court decided that Florida law offered no relief to the victims of temporary regulatory burdens imposed in good faith and that Monroe county did act in good faith. *See NPL I,* 985 F.2d at 1491 & n. 4. Thus, whether or not there remained economically viable uses, an independent and sufficient legal basis for the state court's holding that no compensation was due existed: Florida law provided no remedy. Given this legal conclusion, there was no need for the state court to decide whether or not economically viable uses had existed. Because NPL has failed to satisfy the "necessary and material" requirement, Defendants were properly permitted to introduce in the district court testimony on other economically viable uses.[6] We affirm the district court's determination that

---

[6]We note also that it is unclear from the state court opinion that the judge was even addressing the takings claim, and so it is doubtful that Plaintiffs could succeed in satisfying the "actually decided" element either. We need not conclusively resolve this issue, in view of the "necessary and material" analysis, but we note that in general a federal court will not confer preclusive effect on a state court order where it is

other economically viable uses of the property existed.

*D. Good Faith Reliance*

NPL argues that it acted "in good faith reliance upon the existing residential zoning," and, therefore, the County was equitably estopped from rezoning the property to preclude residential development (or required to pay compensation if it did so rezone).  NPL relies chiefly on  *Wheeler v. City of Pleasant Grove,* 664 F.2d 99 (5th Cir. Unit B. 1981), and *A.A. Profiles, Inc. v. City of Fort Lauderdale,* 850 F.2d 1483 (11th Cir.1988).  NPL's argument is essentially that it spent a great sum of money to purchase the property, which it would not have done but for the residential zoning.

NPL's argument fails. Both  *Wheeler* and *A.A. Profiles* contained a critical element that is missing from the facts of this case.  In both cases, the local government took affirmative steps—by granting a permit or passing a specific resolution approving the project later precluded by rezoning—beyond the mere

unclear what the state court actually decided.  *See PaineWebber Inc. v. Farnam,* 870 F.2d 1286, 1287 (7th Cir.1989) ("We now hold that the vagueness of the state court order renders ... collateral estoppel doctrine[ ] ... inapplicable.").  The state court order here is vague because there is no discussion of what is an economically viable use for takings purposes and because, as noted above, Florida's lack of remedy caused factual findings on economically viable uses to be unimportant—making it unlikely that the state court was doing more than making a passing observation.

In addition, because we conclude the Florida courts would not accord preclusive effect, it is unnecessary to consider whether an exception to section 1738 would defeat the state law grant of preclusion.  *See generally Marrese,* 470 U.S. at 383, 105 S.Ct. at 1333 ("The issue whether there is an exception to § 1738 arises only if state law indicates that litigation of a particular claim or issue should be barred in the subsequent federal proceeding.").

creation of the earlier zoning map. The panel in *A.A. Profiles* noted, "*Wheeler* is indistinguishable from this case. The original resolution [approving the project] granted appellant a property interest...." 850 F.2d at 1488 (footnote omitted).

Here, Plaintiff failed to allege any affirmative act by the County sufficient to grant a commensurate "property interest." Plaintiff merely alleges that it paid a lot of money for property that the zoning plats indicated was suitable for residential development. That in itself is insufficient to invoke the rule of *Wheeler* and *A.A. Profiles*. *Cf. A.A. Profiles*, 850 F.2d at 1488 ("We note also that although the taking did not occur simply because appellant expended a great amount of money to begin the project, this expenditure in reliance on the resolution underscores the importance of the original resolution."). Because there is no general constitutional right to be free from all changes in land-use laws, *see Lakeview Development Corp. v. City of South Lake Tahoe,* 915 F.2d 1290, 1295 (9th Cir.1990), NPL must do more than rely on the original zoning to establish an equitable estoppel. It has not done so, and is entitled to no compensation.[7]

---

[7]Because we reject each of Plaintiff's takings arguments on the merits or on ripeness grounds, we need not discuss the contention that the district court erred in its calculation of the applicable takings period. Also, we need not address the controversy over the import of NPL's sale of the property in 1982 to its principals (in what NPL referred to at argument as a "business divorce"). *See generally NPL I* at 1490-91. The takings period allegedly lasted from 1980 (the rezoning) to 1986 (the invalidation of the rezoning). NPL was the owner during the earlier part of this period and, thus, has standing here. Perhaps the sale of the property could have shortened the takings period for NPL (and so reduced NPL's potential damages), but we need not address this issue because we conclude that as a matter of law there was no violation of the Fifth Amendment and no damages are to be awarded.

III. The Substantive Due Process Issues

NPL argues the property was so patently unsafe for use as an airport that the rezoning constituted a violation of their "substantive" rights under the due process clause.[8] To prove a due process violation, NPL must show that the rezoning was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926).

Nothing clearly arbitrary and unreasonable has been shown about the zoning here. The record at trial established beyond question that, first, the properties in question were created for use as an airport (NPL's counsel admitted as much at argument), and second, that the strip did in fact function as an airport for some time both before the rezoning (that is, the land's historical use was as an airport) and after. Knowledge of these facts, which we presume the zoning entities to have had, is sufficient in itself for us to conclude that local officials violated no substantive due process right by the rezoning effort. *See South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir.1974) (en banc) ("A zoning commission is a quasi-legislative body.... Its actions are entitled to a presumption of validity."). The Federal Constitution does not empower courts to sit just to second-guess legislative judgments on technical matters like airport safety. The substantive due process claim fails.

---

[8]NPL apparently argued below that its procedural due process rights were violated, but makes no such argument here.

We note in addition that NPL's argument—that the airport zoning was irrational because of safety concerns—refers only to the existing, not the possible, uses of the property as an airport. Appellants fail to press the assertion that no safe runway ever could be constructed on the property. For these reasons, judgment on the substantive due process claim was properly awarded to Defendants.

IV. The Jury Trial Issues

NPL contends that contested factual issues required the empaneling of a jury on both the Fifth Amendment takings claim and the Fourteenth Amendment substantive due process claim. We reject these arguments.

No jury trial was required for the substantive due process claim. This court addressed the division of labor between judge and jury on substantive due process claims for zoning cases in *Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570 (11th Cir.1989). There, we held that "the ultimate issue of whether a zoning decision is arbitrary and capricious is a question of law to be determined by the court." *Id.* at 1578. We went on to point out, however, that "subsidiary facts" in the substantive due process analysis, such as what motivated the denial of a building permit, "are properly for the factfinder." *Id.* at 1578 & n. 15. Thus, certain questions in substantive due process zoning cases may on occasion require the empaneling of a jury.

NPL, however, cannot complain here that material "subsidiary facts" were improperly decided by the judge, because there were no material facts in contention below. In substantive due process

challenges to zoning laws, we recognize, as noted above:

> A zoning commission is a quasi-legislative body....  Its
> actions are entitled to a presumption of validity.  The only
> question which federal district courts may consider is whether
> the action of the zoning commission is arbitrary and
> capricious, having no substantial relation to the general
> welfare.

*South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir.1974) (en
banc), *quoted in Greenbriar,* 881 F.2d at 1577 n. 14.  In the light
of the great deference accorded the quasi-legislative body in
zoning cases, that NPL's property was actually conceived as and
later used as an airport before the PA rezoning precludes, as a
matter of law, a determination that the PA rezoning was an act so
dangerous as to be clearly arbitrary and unreasonable.  *See
generally Hoeck v. City of Portland,* 57 F.3d 781, 786 (9th
Cir.1995) (concluding that "as a matter of law, no reasonable jury
could find that the City has acted in an [sic] clearly arbitrary
and unreasonable manner") (applying rule of *Village of Euclid,* 272
U.S. at 395, 47 S.Ct. at 121).  Because no material, subsidiary
fact was in issue, the trial judge was justified in resolving the
substantive due process issue himself.

On the regulatory takings claim NPL has asserted, but failed
to support with any case, the proposition that subsidiary facts
must be decided by a jury.[9]  We have discovered no indication that
the rule in regulatory takings cases differs from the general
eminent domain framework, in which issues pertaining to whether a
taking has occurred are for the court, while damages issues are the

---

[9]In fact, counsel for NPL originally represented to the
district court that "the issues relating to taking other than
damages are for the Court.  The damages issue is for the jury."

province of the jury. In *United States v. Reynolds,* 397 U.S. 14, 18, 90 S.Ct. 803, 806, 25 L.Ed.2d 12 (1970), for example, the Supreme Court noted that "it has long been settled that there is no constitutional right to a jury in eminent domain proceedings." And, contrary to NPL's contention, a recent panel opinion of this court (since vacated) noted, we think correctly, that no jury factfinding is required in regulatory takings cases. *See Resolution Trust Corp. v. Town of Highland Beach,* 18 F.3d 1536, 1550 (11th Cir.1994), *vacated,* 42 F.3d 626 (11th Cir.1994) ("[T]he court determines all issues, legal and factual, in an inverse condemnation suit, save the question of just compensation...."). We agree with the district judge's determination that no jury had to be empaneled for the regulatory takings claim.

Because the district court committed no reversible error, the judgment below is AFFIRMED.