United States Court of Appeals,

Eleventh Circuit.

Nos. 96-3657, 97-2041.

VESTA FIRE INSURANCE CORPORATION, Vesta Insurance Corp., Sheffield Insurance Corporation, an Alabama Corporation, Plaintiffs-Appellants,

v.

STATE OF FLORIDA, Tom Gallagher, in his capacity as Insurance Commissioner, State Board of Administration, Ash Williams, Jr., in his capacity as Executive Director, Defendants-Appellees.

May 22, 1998.

Appeals from the United States District Court for the Northern District of Florida. (No. 95-40138-WS), William Stafford, Judge.

Before EDMONDSON and BIRCH, Circuit Judges, and FAY, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Plaintiffs appeal the district court's grant of summary judgment in favor of Defendants. In evaluating cross-motions for summary judgment, the district court decided that no genuine issues of material fact existed and that judgment could be granted to Defendants as a matter of law on Plaintiffs' claims that recent Florida insurance legislation violated the Due Process, Taking, and Contract Clauses of the United States Constitution. Because we conclude that the district court erred in granting summary judgment about whether a regulatory taking occurred, we vacate the grant of summary judgment on that issue and remand for further proceedings consistent with this opinion. We affirm on all other issues.[1]

*Background*

---

[1]Plaintiffs in this case are insurance companies subject to the Florida statutes. Defendants include the state agencies responsible for administering the insurance regulations found in the statutes.

After Hurricane Andrew hit Florida in 1992, insurance companies began to lessen their potential exposure to policies likely to result in hurricane damage liability: residential line policies in Florida. To prevent the total withdrawal of insurance companies and the subsequent unavailability of insurance if companies left the Florida market, the Florida legislature passed several statutes.

The first of these statutes was a "Moratorium Statute," which prohibited the nonrenewal and cancellation of residential line insurance policies for reasons related to the risk of hurricane damage. *See* 1993 Fla. Laws ch. 93-401 § 1. The Moratorium Statute was passed as temporary legislation.

The Florida legislature then passed the "Moratorium Phaseout Statute," which allowed limited cancellation and nonrenewal of residential policies. *See* Fla. Stat. § 627.7013;[2] *see also* 1993 Fla. Laws ch. 93-410 § 19; 1993 Fla. Laws ch. 93-411 § 1. The Moratorium Phaseout Statute provided that, in a twelve-month period, no insurer could cancel or nonrenew more than 5% of its residential policies in Florida or more than 10% of its residential policies in a single Florida county. *See* Fla. Stat. § 627.7013. This phaseout plan was interpreted by Department of Insurance (DOI) rules—despite a Florida statute permitting the total withdrawal of insurance companies upon 45-days notice, *see* Fla. Stat. § 627.4133(2)—as generally prohibiting an insurer's total withdrawal from doing business in the State of Florida.[3]

In addition, legislation was passed requiring insurers to pay annual premiums to the Florida

---

[2]When the summary judgment motions were argued in the district court, Defendants said that the moratorium would end in November 1996. The Moratorium Phaseout and related statutes have since been extended and are not scheduled to end until 1999. *See* 1996 Fla. Laws ch. 96-194 § 13. Whether future extensions might be made is unknown.

[3]The DOI reasoned that the other, more general withdrawal statute would continue to apply to other kinds of insurance—car, fire, life—and that the new, specific Moratorium Phaseout Statute would apply only to companies issuing residential home insurance policies.

Hurricane Catastrophe Fund. This fund is intended to provide reinsurance to insurance companies doing business in Florida. The reinsurance provides protection to companies which, following a hurricane, are unable to pay fully on their policies.

Plaintiffs wish to withdraw entirely from the insurance industry in Florida but have been prohibited from doing so by the Moratorium Phaseout Statute.[4] This prohibition, Plaintiffs argue, violates several provisions of the United States Constitution: (1) the Taking Clause of the Fifth Amendment; (2) the Contract Clause; and (3) Plaintiffs' Substantive Due Process rights under the Fourteenth Amendment.[5]

Plaintiffs filed complaints alleging these constitutional violations.[6] Both Plaintiffs and Defendants moved for summary judgment. Plaintiffs, however, did not move for summary judgment on the issue of regulatory taking. Instead, Plaintiffs argued that summary judgment was precluded because genuine issues of material fact existed on that claim. The district court granted summary

---

[4]Although Plaintiffs challenge the constitutionality of both the Moratorium Phaseout and the Catastrophe Fund legislation, only the Moratorium Phaseout Statute directly implicates the Constitution. The required contribution to the fund, absent the Moratorium Phaseout Statute, is a constitutional exercise of the State of Florida's police power. *See, e.g., Meriden Trust & Safe Deposit Co. v. FDIC,* 62 F.3d 449, 454-55 (2d Cir.1995). Thus, the constitutionality of the Moratorium Phaseout Statute is the focus of this opinion.

[5]Plaintiffs claim that their Substantive Due Process rights were violated. Plaintiffs' argument focuses on the right to freedom of association, but this case does not involve infringement of that right. Also, because the regulation about which Plaintiffs complain is economic, the legislation is presumed valid unless no rational basis exists for its enactment. *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 14-16, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). We cannot say Florida lacked a rational basis for passing this legislation. Plaintiffs' Substantive Due Process claim is without merit, and we do not discuss further that claim.

Also without merit is Plaintiffs' claim that the district court erred by ruling on the motions for summary judgment before ruling on Plaintiffs' motion to compel discovery. We, therefore, affirm the district court's decision on these issues.

[6]Two cases by insurance companies against the Defendants were consolidated in this appeal.

judgment in favor of Defendants on all claims.

*Discussion*

The district court's grant of summary judgment is reviewed by this court *de novo.  See Real Estate Financing v. Resolution Trust Corp.,* 950 F.2d 1540, 1543 (11th Cir.1992).  Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c);  *see also Hale v. Tallapoosa County,* 50 F.3d 1579, 1581 (11th Cir.1995).

*I. The Taking Clause*

The Taking Clause of the Fifth Amendment states, in relevant part, "nor shall private property be taken for public use, without just compensation."  U.S. Const. amend. V;  *see also Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 121-23, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631 (1978) (applying the Fifth Amendment to the States through the Fourteenth Amendment).  "The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar [the] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

Plaintiffs allege substantial financial losses as a result of the prohibition of withdrawal from Florida, coupled with the forced contributions to the Catastrophe Fund. This statutory scheme, Plaintiffs argue, precludes them from allocating their companies' resources as they see fit and forces them to suffer net economic losses in the Florida market, resulting in a taking of their "property" without just compensation in violation of the Fifth Amendment to the United States Constitution.[7]

---

[7]Plaintiffs argued an additional issue:  that the district court erred because it treated Plaintiffs' taking challenge as "facial" instead of as an "as applied" constitutional challenge.  We believe the district court properly addressed the challenge in this case as an "as applied" challenge.

*A. Per Se Takings*

Whether government conduct, in relation to private property, works a taking involves the courts in an ad hoc, factual inquiry. *See Penn Central,* 438 U.S. at 123-25, 98 S.Ct. at 2659. But, certain invasions of private property are deemed "takings" without regard to the state's interest in possessing or otherwise using the property: per se takings. *See New Port Largo, Inc. v. Monroe County,* 95 F.3d 1084, 1089 (11th Cir.1996) ("In addition to *physical invasions* of property, the Supreme Court has also accorded "categorical [per se] treatment,' invariably requiring compensation, to cases "where regulation *denies all economically beneficial or productive use* of land.'") (emphasis added) (citation omitted).

Plaintiffs argue that the statutes establishing the Moratorium Phaseout and the Catastrophe Fund are *per se* takings because of the compulsory nature of the government act: the statutes make it mandatory for all insurance companies currently doing business in Florida to remain in that market and contribute to the fund. But, the mandatory nature of the government's act does not place these statutes in the per se takings category: neither a physical invasion nor a denial of *all* beneficial use of "property" has been shown. As the district court properly pointed out: "[t]he compelled insurance contracts still belong to Plaintiffs; the insureds must still pay Plaintiffs all required premiums; Plaintiffs can still cancel or nonrenew policies for [nonhurricane related reasons]; [and] Plaintiffs can still apply for rate increases...." District Court Order at 20.

Plaintiffs also argue that these statutes effect a government takeover of private insurance

---

Plaintiffs now, and in the district court, challenged the Florida statutes only as applied to Plaintiffs. Thus, we do not consider the statutory scheme's constitutionality on its face. We discuss (as urged by Plaintiffs) the constitutionality of the statutes only "as applied" to Plaintiffs. *Compare Agins v. City of Tiburon,* 447 U.S. 255, 259-61, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980) (facial challenge), *with Penn Central,* 438 U.S. 104, 127-31, 98 S.Ct. 2646, 2661-62 (as applied challenge).

companies, resulting in per se takings. But the cases relied on by Plaintiffs—*United States v. Pewee Coal Co.,* 341 U.S. 114, 71 S.Ct. 670, 95 L.Ed. 809 (1951), and *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947)—are not comparable to this case. In *Pewee Coal* and *United Mine Workers,* the government took total, direct control of private businesses. This case does not present that kind of occupation or takeover, and it does not present a per se taking.

*B. Regulatory Takings*

Plaintiffs also allege that a regulatory (non per se) taking is effected by the statutes.[8] The current standard for evaluating such claims is found in *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). In *Connolly,* the Supreme Court recognized three factors that should be considered to identify a regulatory taking: (1) the economic impact of the challenged rule, regulation, or statute on the plaintiff; (2) the extent to which the regulation interferes with investment-backed expectations; and (3) the nature of the challenged action. *See id.* at 224-26, 106 S.Ct. at 1026 (citations omitted). Plaintiffs contend, and we agree, that the district court failed to consider properly these factors and that genuine issues of material fact exist to preclude summary judgment on this claim.

*1. Economic Impact on Plaintiffs*

Plaintiffs point to their economic loss in the Florida market and the approximately $1 million

---

[8]At the outset, we recognize that insurance contracts can be property subject to an unconstitutional taking under the Fifth Amendment. *See Lynch v. United States,* 292 U.S. 571, 577-79, 54 S.Ct. 840, 843, 78 L.Ed. 1434 (1934) ("Valid contracts are property ...."); *see also Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1003, 104 S.Ct. 2862, 2873, 81 L.Ed.2d 815 (1984). "If regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). But, "that legislation disregards or destroys existing contractual rights [like the right to cancel an insurance contract] does not always transform the regulation into an illegal taking." *Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 224, 106 S.Ct. 1018, 1025, 89 L.Ed.2d 166 (1986).

premium paid to the Catastrophe Fund as a negative economic impact. Plaintiffs also argue that the nature of the Moratorium Phaseout Statute—the potential for another extension—requires them to stay in the Florida insurance market indefinitely, creating a substantial economic impact. But Defendants say that the possibility for rate increases counteracts the negative economic impact. Plaintiffs' applications for rate increases, however, have been denied. We believe that, when considering the economic impact on Plaintiffs, the potential for future extensions of the Moratorium Phaseout cannot be determined; and the potential for future rate increases is no answer to Plaintiffs' ongoing economic loss when rate increases have been applied for and have been denied.

The district court should have considered what economic impact Plaintiffs have suffered and will suffer as a result of the challenged statutes. The parties dispute exactly what return Plaintiffs have enjoyed in the Florida market since the moratorium and whether that return is reasonable. Defendants, and the district court in its decision, relied heavily on the fact that the moratorium would end in 1996. But now, in 1998, the moratorium still exists and is scheduled to exist until June 1999. Thus, the extent of the economic impact on Plaintiffs remains a material fact that must be determined based upon an expiration of the moratorium in 1999.[9]

*2. Investment-Backed Expectations*

Plaintiffs also allege that the limitations on their withdrawal from the Florida market interfere with their investment-backed expectations. The district court did not address this factor.

In general, "[t]hose who do business in the regulated field [of insurance] cannot object if the

---

[9]The extension of the moratorium statutes into 1999 occurred after Plaintiffs filed their complaint. Thus we expect Plaintiffs will be permitted to file supplemental pleadings, which would include the economic effect of the moratorium statutes due to the latest extension. *See* Fed.R.Civ.P. 15(d) (providing for the filing of supplemental briefs, upon motion of a party, "setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented").

legislative scheme is buttressed by subsequent amendments to achieve the legislative end." *Connolly,* 475 U.S. at 227, 106 S.Ct. at 1027 (internal quotations and citations omitted). This case, however, does not present the typical situation of simple regulation as a condition of doing business: the statutes require the doing of business.

The Supreme Court has written these words about the constitutionality of a taking: "A different case would be presented were the statute, on its face or as applied, to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy." *Yee v. City of Escondido,* 503 U.S. 519, 528, 112 S.Ct. 1522, 1529, 118 L.Ed.2d 153 (1992); *see also Lewis v. Safeco Ins. Co. of America,* 98 Misc.2d 856, 861, 414 N.Y.S.2d 823 (1978) ("[T]his law expressly requires that ... insurance companies, like the defendants, renew automobile insurance policies and, accordingly, it warrants careful review."). This case may be *that* "different case": insurance companies must refrain, potentially in perpetuity, from terminating contracts. "While [a state's] police power may limit and restrict the uses to which an owner may put his property, it may not compel him to use such property for a particular purpose if he prefers to abandon such a use thereof." *Department of Pub. Works v. City of San Diego,* 122 Cal.App. 159, 10 P.2d 102, 105 (1932).

Interference with investment-backed expectations occurs when an inadequate history of similar government regulation exists: where the earlier regulation does not provide companies with sufficient notice that they may be subject to the new or additional regulation. *See Connolly,* 475 U.S. at 226-28, 106 S.Ct. at 1027. Plaintiffs argue that the moratorium statutes interfere with reasonable investment-backed expectations. Plaintiffs contend that whatever regulation Plaintiffs may have anticipated when they entered the Florida market they could not anticipate that withdrawal from that market—should additional regulation become too burdensome—would be prohibited. The

district court, however, did not consider whether the regulation at issue should have been anticipated by Plaintiffs, particularly the Moratorium Phaseout Statute which prohibits Plaintiffs' total withdrawal from doing business in Florida.

Interference with the investment-backed expectations must be considered with the other factors: the government's interest and the economic impact on Plaintiffs. Genuine issues of material fact exist about what investment-backed expectations Plaintiffs had when they entered the Florida market and what impact the moratorium statutes have had on Plaintiffs' expectations. So, summary judgment was inappropriate.

*3. Nature of the Government Action*

In addition, Plaintiffs argue that the nature of the government acts supports the takings claim. Plaintiffs contend that the compulsory nature of the legislation alone results in a taking; but all government regulation is compulsory in nature. "[I]t cannot be said that the Taking Clause is violated whenever legislation requires one person to use his or her assets for the benefit of another." *Connolly,* 475 U.S. at 223, 106 S.Ct. at 1025. But the nature of the state's interest is critical in determining whether a taking has occurred. *See id.* When important public interests are served, a taking is less likely to have occurred. *See Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 485-88, 107 S.Ct. 1232, 1242-43, 94 L.Ed.2d 472 (1987).

No doubt can exist that the general regulation of insurance is within the State's police powers. *See* 15 U.S.C. §§ 1012 ("The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business."). After Hurricane Andrew, several insurance companies became insolvent, unable to pay their policies. Other companies sought to withdraw altogether from the Florida insurance market. This withdrawal could have had serious negative effects on Florida's real estate market and on the

economy of the State. The moratorium was intended as a stabilizing force in the market and was within the State of Florida's police power. The government interest in this case was the public welfare of the residents of Florida. But the nature of the government interest and its importance, given all the circumstances, as well as the extent of the regulations' harsh impact on Plaintiffs' interests must be determined by the district court.

The district court erroneously granted Defendants' motion for summary judgment without considering the financial rate of return for Plaintiffs and the impact on Plaintiffs' investment-backed expectations. "These "ad hoc, factual inquiries' must be conducted with respect to specific property, and the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances." *Hodel v. Virginia Surface Mining and Reclamation Ass'n, Inc.,* 452 U.S. 264, 295, 101 S.Ct. 2352, 2370, 69 L.Ed.2d 1 (1981). Without knowing the economic impact of the legislation and the Plaintiffs' reasonable expectations, the necessary study of competing interests cannot be accomplished and summary judgment cannot be granted. *See generally Penn Central,* 438 U.S. 104, 123-29, 98 S.Ct. 2646, 2659-61 (discussing the variety of interests involved and to be considered in a taking case).

*II. Contract Clause*

The Contract Clause of the United States Constitution provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. art. 1, § 10. "Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State "to safeguard the vital interests of its people.' " *Energy Reserves Group, Inc. v. Kansas Power and Light Co.,* 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983) (citation omitted).

Three factors are considered when evaluating a claim that the Contract Clause has been

violated: (1) whether the law substantially impairs a contractual relationship; (2) whether there is a significant and legitimate public purpose for the law; and (3) whether the adjustments of rights and responsibilities of the contracting parties are based upon reasonable conditions and are of an appropriate nature. *See id.* at 410-13, 103 S.Ct. at 704-05.

Plaintiffs make a sufficient showing that the Florida legislation substantially impaired the contracts between the insurance companies and their insureds. Insurance provides coverage of a specified risk for a specified time. At the end of that time, insurance companies reevaluate the risk and decide whether they wish to remain the insurers of that risk. "Total destruction of contractual expectations is not necessary for a finding of substantial impairment." *Id.* at 411, 103 S.Ct. at 704. Under the Moratorium Phaseout, Plaintiffs are forced to continue contractual relationships that otherwise, pursuant to the terms of the contracts, could be rightfully terminated.

Assuming a substantial impairment to Plaintiffs' contracts exists, the State "must have a significant and legitimate public purpose behind the regulation." *Id.* "[T]he public purpose need not be addressed to an emergency or temporary situation." *Id.* at 412, 103 S.Ct. at 705. Defendants have demonstrated a legitimate public purpose: protection and stabilization of the Florida economy, particularly the real estate market. *See generally Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978); *Home Building & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934).

Once a legitimate purpose is identified, we must look to whether the state's adjustments of the rights and responsibilities of the contracting parties are based upon reasonable conditions and are of an appropriate nature. *See Energy Reserves,* 459 U.S. at 412-13, 103 S.Ct. at 705. "Unless the State itself is a contracting party.. . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Id.* (internal citations and quotations

omitted). The State was no party to the insurance contracts;[10] so based upon the legislature's judgment, the statutes' impact on existing insurance contracts cannot be said to be an unconstitutional impairment.

*Conclusion*

No factual disputes exist about the Contract Clause, Substantive Due Process, or Per Se Taking claims; so summary judgment was appropriate for Defendant on those claims. But, summary judgment was incorrect on Plaintiffs' claim of regulatory taking resulting from the Florida insurance statutes.

AFFIRMED in part; VACATED and REMANDED in part.

---

[10]Plaintiffs argue that we cannot consider the legislature's purported purposes for the statutes because the State is a third-party beneficiary to the contracts based upon its control of the Catastrophe Fund. The law of Florida does not support this theory. *See Thompson v. Commercial Union Ins. Co.,* 250 So.2d 259, 262 (Fla.1971) (To be third-party beneficiary, "[t]he clear intent and purpose of the contract [must be] to directly and substantially benefit the third party.").